**Tonya Rene GREEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–93–00570–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 10, 1994.

Fred Marsh, Denton, Charles J. Brink, Houston, Tonya Rene Green Campbell, Argyle, for appellant.

Bill R. Turner, Houston, James W. Locke, Bryan, for appellee.

Before WILSON, COHEN and ANDELL, JJ.

## OPINION

WILSON, Justice.

Appellant, Tonya Green, was charged with theft under a single scheme and continuing course of conduct resulting in the loss of between $750 and $20,000. A jury found appellant guilty, and the court assessed pun-

ishment at six years in prison, probated for six years, and a fine of $500, and ordered restitution in the amount of $19,500. Appellant presents six points of error for our review. Appellant challenges the sufficiency of the evidence supporting the finding of guilt; argues that the indictment should have been dismissed; argues the charge should have included instructions on extraneous offenses and that mere presence is not enough to sustain a conviction; and challenges the sufficiency of the evidence supporting the court's restitution order. We affirm.

**Fact summary**

Appellant was hired by complainant, Lexa Wetterman, in November 1989, as a sales clerk in a shop owned by Wetterman called the Rainbow Store in College Station. Complainant and her husband were opening another store nearby called Images. Appellant worked at Rainbow Store approximately two months before the complainant moved her to Images to work as an assistant manager. Appellant worked there until January 1991. Appellant's duties included scheduling and assisting with bookkeeping procedures. Appellant was made manager of Images in May 1990. During this time, appellant and complainant became good friends.

Appellant was in charge of the day-to-day operations of the store. At the end of the day, the employee closing the store would compile a daily summary, commonly referred to as a "daily." This report showed the total sales for each day, broken down by category of merchandise. This report also showed the cash on hand, the total of checks received, and the total charge purchases made that day. The bank deposit amount, which was the cash on hand minus $90 starting cash and the checks received, was shown on the report. The information reported on the daily was gathered from a summary of information generated by the cash register, called the "Z," and the cash, checks, and charge slips from the cash drawer of the register.

The cash and checks were entered on a deposit slip, and these items were hidden in the store to be deposited at the bank the next day. Regular practice was to go to the bank each day, but occasionally two or three days' deposits would be taken to the bank at once. Even when more than one day's deposit was made in the same day, each day's sales were shown on the bank statement as a separate deposit. The deposit was made by either appellant or complainant.

Overrings were generally entered manually on the daily report. An overring would be necessary if a error was made in ringing up an item, and the customer never left the store with it. It was store policy not to give refunds for items not purchased the same day the item was returned. Therefore, any overring should correspond with a sale made that same day. A manual overring required that the original receipt be kept, labeled "OR" to signify overring, and the customer sign the back of the receipt. The receipt was placed in the cash drawer, and that amount was deducted from the daily. Complainant testified that in November 1990, she showed appellant how to do overrings on the register so that the register automatically deducted the overrings from the daily summaries. Complainant testified only she and appellant knew how to do overrings this way. Appellant denied learning how to do the overrings on the register.

Complainant testified appellant stole money from Images in several ways. First, she testified, using documentary evidence, appellant failed to ring up sales made in the store. Receipts for sales which were not reflected in the daily summaries for the particular merchandise category were entered in evidence.[1] All the receipts entered showed sales made by appellant. These unrecorded sales totaled $1,734.80.

Complainant also testified appellant failed to deposit several days' receipts. These deposits that were never made included both cash and checks.[2] The deposits never taken to the bank totaled $1,245.86. Appellant should have made the deposits because her

---

1. This was done on February 19, 1990; February 23, 1990; August 12, 1990; August 24, 1990; September 3, 1990; September 10, 1990; and September 24, 1990.

2. Deposits were not made on March 24, 1990; April 14, 1990; May 19, 1990; and May 23, 1990.

handwriting was on the deposit slips. On other days, the total deposited would be correct, but more would be deposited in checks than was received, and the cash deposited was less than received.[3] Appellant was the person making the deposits. A reasonable inference from this evidence is that because the checks were payable to Images, appellant would take the checks from the missing deposits and deposit them on later days, removing the corresponding amount of cash.

Complainant also testified appellant made false overrings, both manually and on the register.[4] These overrings did not have the proper documentation and did not correspond with a sale made that day. Often, the overrings were for even dollar amounts. The false overrings totaled $1,626.69.

Complainant also testified there were days the dailys did not reflect what the register showed the sales had been, and the daily was understated.[5] The daily sheets for December are missing. However, weekly totals are available, and the totals reported are often underreported on the weekly sales summaries compared to the register tape.[6] Also, complainant's husband found a ripped-up daily for December 19, 1990, in the dumpster outside appellant's apartment. A comparison of this daily with the weekly summary indicated the weekly was underreported for that day by $300. These errors totaled $1,192.43.

## Sufficiency of the evidence

■ In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.

Crim.App.1991). The trier of fact is the sole judge of the credibility of witnesses and may choose to believe or disbelieve all or any part of a witness' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Geesa*, 820 S.W.2d at 160; *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex. Crim.App.1984).

■ In this case, the State was required to prove theft, TEX.PENAL CODE ANN. § 31.03 (Vernon 1989 & Supp.1994), as well as the fact that the amounts were aggregated under TEX.PENAL CODE ANN. § 31.09 (Vernon 1989). *Whitehead v. State*, 745 S.W.2d 374, 376 (Tex. Crim.App.1988).

Appellant argues that the evidence does not prove she committed the thefts beyond a reasonable doubt, but shows only a strong suspicion that she committed the theft. The individual incidents proven at trial were well documented. Appellant was connected to each incident in some way. Based on our review of the evidence presented at trial as summarized above, we conclude that a reasonable jury could have found beyond a reasonable doubt that appellant committed theft. We overrule appellant's first point of error.

## Indictment

Appellant argues in her second point of error that the indictment should have been dismissed because it failed to state specific values of the money taken, and failed to state that the values alleged were aggregated. The indictment read as follows:

[the appellant], heretofore on or about December 24, 1990, did then and there intentionally appropriate, by acquiring and otherwise exercising control over property, to-

---

3. This occurred on May 22, 1990; May 25, 1990; May 28, 1990; May 29, 1990; July 2, 1990; July 3, 1990; July 4, 1990; July 5, 1990; July 16, 1990; July 17, 1990; July 19, 1990; August 24, 1990; and October 13, 1990.

4. Complainant reports false overrings on July 2, 1990; August 24, 1990; September 3, 1990; October 13, 1990; November 17, 1990; December 12, 1990; December 13, 1990; December 15, 1990 and December 24, 1990. Particularly in December, the overrings were made on the regis-

ter. In late November, complainant showed appellant how to do overrings this way, and appellant and complainant were the only employees at Images who knew how to do this.

5. This occurred on November 26, 1990.

6. Sales were underreported when comparing the register tape to the weekly sales summary on December 15, 1990, and December 24, 1990.

wit: money of the value of $750.00 or more but less than $20,000.00 from the owner, LEXA WETTERMAN, without the effective consent of the owner and with intent to deprive the owner of the property and said property was obtained pursuant to one scheme and continuing course of conduct which began on or about the 24th day of February, 1990 and continued until on or about the 30th day of January, 1991.

■ No specific values are required to be pled. "Since Art. [sic] 31.09 ... says that 'the conduct may be considered as one offense', each separate theft need not be alleged." *Whitehead*, 745 S.W.2d at 377. Giving the range of aggregate values is satisfactory.

■ Additionally, the State argues that the word "aggregate" is not required to be used in the indictment. The indictment must allege each element of an offense. *McElroy v. State*, 720 S.W.2d 490, 492 (Tex.Crim.App. 1986). "[T]he allegation that the values of the property taken were aggregated because that property was taken pursuant to a continuing course of conduct [under TEX.PENAL CODE ANN. § 31.09] *is an element of the offense and must be included in the indictment.*" *Whitehead*, 745 S.W.2d at 377 (citing *Turner v. State*, 636 S.W.2d 189, 196 (Tex. Crim.App.1982)).

The court in both *Turner* and *Whitehead* reversed because the indictments did not charge the aggregation element. *Whitehead*, 745 S.W.2d at 377; *Turner*, 636 S.W.2d at 196. However, the indictments in these two cases were standard theft indictments. The word "aggregate" was not mentioned, nor was there mention of a continuing course of conduct over a period of time. *Whitehead*, 745 S.W.2d at 375; *Turner*, 636 S.W.2d at 192. In this case, the indictment alleged the theft was "pursuant to one scheme and continuing course of conduct which began on or about the 24th day of February, 1990 and continued until on or about the 30th day of January, 1991." This language sufficiently alleged the aggregation element of this offense, despite the fact that the word "aggregation" was not specifically included in the indictment. Appellant does not contend he received inadequate notice that impeded his ability to prepare a defense, as is required by *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim.App.1986). The State disclosed to appellant's counsel before trial the documents on which it relied. Appellant received adequate notice of the charged crime. We overrule appellant's second point of error.

**Election**

■ Appellant argues in her third point of error the State should have elected the offenses on which it was proceeding, and the failure to do so is tantamount to convicting appellant for being a criminal in general. However, section 31.09 specifically says that aggregation of an amount involved in a theft pursuant to one scheme or course of conduct results in only one offense. Appellant was convicted of a single crime which took place over the course of a one-year period. Election was not required, as evidence of only one offense was presented for consideration. We overrule appellant's third point of error.

**The charge**

■ Appellant complains in her fourth and fifth points of error about omissions from the jury charge. Appellant's fourth point of error states she was entitled to a charge on extraneous offenses, and fifth point of error states she was entitled to an instruction that mere presence of an accused is insufficient evidence of participation in an offense. When evidence from any source raises the issue of a lesser included offense or a defensive theory, it must be included in the charge. *Gibson v. State*, 726 S.W.2d 129, 132 (Tex.Crim.App.1987) (op. on reh'g). However, if the defensive theory simply negates an element of the offense, it is not necessary to charge on that theory. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App.1986). The court is also not required to charge on an issue not raised by the evidence. *Carrillo v. State*, 591 S.W.2d 876, 890 (Tex.Crim.App. 1979).

**1. Extraneous offenses**

■ Appellant does not cite any reference in the record to extraneous offenses. Appellant simply complains of events occurring during the relevant time period between

February 1990 and January 1991. These events are part of the crime charged. The evidence has not raised the issue of extraneous offenses, therefore an instruction to the jury was not required. We overrule appellant's fourth point of error.

### 2. Mere presence

 Appellant argues she is entitled to charge the jury that mere presence is insufficient evidence of participation in an offense, relying on *Segura v. State*, 850 S.W.2d 681, 684 (Tex.App.—Corpus Christi 1993, no pet.). While it is true mere presence at a crime is not sufficient evidence of participation in a crime, appellant has presented us with no authority that the jury should be charged on this issue. The instruction on "mere presence" requested by appellant is simply a request for a charge on a defensive theory that negates an element of the offense, namely that the actor obtains or exercises control over property. *See* Tex.Penal Code Ann. § 31.03 (a person commits an offense if he unlawfully appropriates property with the intent to deprive the owner of property). In such a situation, an instruction in the charge is not required, particularly in light of the correct reasonable doubt instruction. *See Geesa*, 820 S.W.2d at 162. We overrule appellant's fifth point of error.

### Sufficiency of the evidence supporting restitution

 Appellant challenges the sufficiency of the evidence supporting the court's restitution order in her sixth point of error. The trial court has the discretion to order restitution.[7] *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex.Crim.App.1980). However, when a court decides to order restitution, due process considerations require the amount ordered to be "just," that is, that amount must have a factual basis in the record. *Cartwright*, 605 S.W.2d at 289. That amount must also be within the parameters of the verdict. *Hefner v. State*, 735 S.W.2d 608, 614 (Tex.App.—Dallas 1987, pet. ref'd).

The evidence at the guilt-innocence stage of the trial revealed evidence supporting $6,025.55 in amounts stolen by appellant from Images. At the conclusion of the testimony, complainant testified that although the exhibits revealed approximately $6,200, the total theft losses between February and December 1990 were $16,000.

Complainant testified at the punishment stage of the trial that total theft losses for the period were $16,000. In support of this testimony, the State showed her a stack of blue folders, and asked her if she knew what the folders were. She replied, "That was the information we compiled to prove that sixteen thousand dollars." She testified to other losses of $2,100 for investigation costs, and $1,400 interest that had to be paid on a note for the business that could not be paid off due to the $16,000 in theft. The total damages complainant testified to were $19,500. Appellant cross-examined Wetterman only about the interest on the note. By choice, appellant did not cross-examine her about the blue folders evidencing the amount of theft losses. The judge ordered restitution in the amount of $19,520.

Wetterman's testimony is some evidence supporting the court's restitution order. Appellant had the opportunity to cross-examine her about the total theft losses and did not do so. This testimony satisfies the due process requirements of such orders. We overrule appellant's sixth point of error.

Finding no error, we affirm the judgment of the trial court.

---

7. The State cites Tex.Code Crim.P.Ann. art. 42.12, § 11(a)(8) (Vernon Supp.1994) for this proposition. This specific law was not enacted at the time of trial. However, common law does support that ordering restitution is a matter of judicial discretion.