In the Matter of S.D.C.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-182-CV

IN THE MATTER OF S.D.C. 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant S.D.C., a juvenile, appeals from an adjudication of delinquent conduct for aggravated assault with a deadly weapon.  A jury found that S.D.C. had engaged in delinquent conduct, assessed his punishment at two years in the Texas Youth Commission (“TYC”), and found that S.D.C. should be placed on probation.  In accordance with the jury’s recommendation, the trial court placed S.D.C. on three years’ probation, subject to one-year extensions up to the age of eighteen. 

S.D.C. raises six points on appeal.  In his first two points, he complains that the evidence is both legally and factually insufficient to support the jury’s finding that he engaged in delinquent conduct.  In points three through five, S.D.C. contends that the trial court erred by refusing to permit cross-examination of the victim concerning a pending arrest warrant; by admitting a pistol into evidence; and by admitting extraneous offense evidence at the adjudication phase, depriving him of a fair trial.  In his sixth point, S.D.C. contends that the trial court erred by failing to include an instruction in the jury charge that extraneous offenses must be proved beyond a reasonable doubt. [App. Br. Viii] We will affirm.

II.  Background Facts

On February 7, 2002, Thierry Burston (“T. Burston”) left the Railridge Apartments with a friend, Van Dean (“Dean”), while his twin brother, Brooks Burston (“B. Burston”) remained upstairs in the apartment.  As T. Burston approached his car, he noticed a maroon Dodge Shadow in the parking lot. [RR3,19] Dean knew the driver of the maroon Dodge, John Brooks (“Brooks”), and went over to speak with him.  T. Burston walked over to the car shortly thereafter and saw S.D.C. sitting in the front passenger seat. 

Initially, T. Burston confused S.D.C. with S.D.C.’s brother, Otis.  The Burston brothers had recently had an altercation with Otis and others at a convenience store.  Believing S.D.C. was  Otis, T. Burston told S.D.C. to get out of the car.  The driver, Brooks, got out of the car first to take up for S.D.C.  S.D.C. and a third passenger, who was sitting in the back seat, then exited the car.  After exiting the car, Brooks ran around to the passenger side and asked T. Burston, “[W]hy are you “f---ing with my homeboy?”

T. Burston, realizing he and Dean were outnumbered, told Dean to go get B. Burston.  As B. Burston approached the group, he asked, “Who wants to box?”  Brooks then ran partway back around the car, turned and came back with a gun in his hand, and pointed the gun at T. Burston’s face.  At this point, B. Burston ducked behind some parked cars.

Brooks, still pointing the gun at T. Burston, began repeatedly yelling at S.D.C. to move the car, tapping it as he was yelling.  S.D.C. got into the passenger’s side of the vehicle and slid over to the driver’s side and began moving the vehicle.  Once the car starting moving, Brooks lowered the gun slightly and the Burston brothers and Dean ran toward the Burstons’ apartment. 

Brooks shot at the Burstons and Dean as they fled.  While T. Burston was running up the stairs to his apartment, he heard gunshots and felt pieces of the apartment wall that had been hit by gunfire falling on his head.  B. Burston was hit in his left buttock.  The bullet traveled through his body and exited through the front of his pants.

When they reached the apartment, T. Burston called the police.  The police arrived and learned from Dean and T. Burston the identity of the vehicle used in the shooting and that Brooks and S.D.C. were suspects in the shooting. Two officers drove T. Burston and Dean around the neighborhood until they identified a maroon Dodge vehicle sitting in Brooks’s driveway as the vehicle driven by the shooter.  They also showed the officers where S.D.C. lived. 

The officers obtained an arrest warrant for Brooks and a search warrant for his home.  The search of Brooks’s home revealed a handgun not associated with the offense and small baggies containing what appeared to be marijuana. Brooks was arrested.  The officers spoke with Brooks and learned that the weapon used in the shooting might be at S.D.C.’s house.

Officers then went to S.D.C.’s home and obtained consent to search from S.D.C.’s mother.  S.D.C. was on the living room sofa when the officers arrived.  Next to the sofa, officers found a backpack containing a Glock 21 pistol and its loaded magazine wrapped in a towel.  The backpack also contained nine baggies of a substance the officers believed to be marijuana. School papers in the backpack bore the name of S.D.C.’s brother, Otis.  S.D.C. was arrested.  Ballistics tests proved that three cartridges found at the shooting scene were fired from the Glock 21 pistol seized from the backpack at S.D.C.’s home.

III.  Legal and Factual Sufficiency of the Evidence

In his first and second points, S.D.C. contends legally and factually insufficient evidence exists to support the jury’s finding that he committed the offense of aggravated assault with a deadly weapon either as a primary actor or under the law of parties.  S.D.C. thus challenges the sufficiency of the evidence to support the jury’s adjudication finding.  In the adjudication phase of a juvenile case, the criminal legal and factual sufficiency standards of review apply.  
In re J.D.P.
, 85 S.W.3d 420, 422-23 (Tex. App.—Fort Worth 2002, no pet.); 
In re G.A.T.
, 16 S.W.3d 818, 828 (Tex. App.—Houston [14
th
 Dist.] 2000, pet. denied).

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict.  
Cardenas v. State
, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000); 
Narvaiz v. State
, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992), 
cert. denied
, 507 U.S. 975 (1993).  The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
McDuff v. State
, 939 S.W.2d 607, 614 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 844 (1997).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
Johnson v. State
, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence.  
Johnson
, 23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.  
Id.
  In performing this review, we are to give due deference to the fact finder's determinations.  
Id.
 at 8-9;  
Clewis
, 922 S.W.2d at 136.  Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice.  
Johnson
, 23 S.W.3d at 9, 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

S.D.C. was charged with delinquent conduct, namely aggravated assault with a deadly weapon, by intentionally or knowingly causing bodily injury to B. Burston by shooting him with a firearm and using or exhibiting a deadly weapon during the commission of the assault.  
See
 
Tex. Penal Code ann
 § 22.02 (Vernon 2003).  The court’s charge authorized the jury to find that S.D.C. engaged in delinquent conduct if he acted alone in or as a party to the shooting of B. Burston.

Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  
Id
.
 § 7.02(a)(2).  It is well-settled that mere presence of an accused at the scene of the offense is not alone sufficient to support a conviction under the law of parties.  
Valdez v. State,
 623 S.W.2d 317, 321 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh’g). However, circumstances tending to prove guilt, combined with other factors, may suffice to show that the accused was a participant.  
Id.
 
 In determining whether a person participated as a party to the charged offense, the court may look to events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to do the prohibited act.  
Ransom v. State,
 920 S.W.2d 288, 302 (Tex. Crim. App.) (op. on reh’g), 
cert. denied,
 519 U.S. 1030 (1996). Circumstantial evidence may be sufficient to show that one is a party to an offense.  
Id.

The evidence showed that S.D.C. was present at the time of the shooting.  He was one of three people riding in the maroon Dodge, which was initially driven by Brooks.  After Brooks exited the vehicle, S.D.C. and the other passenger also got out.  While Brooks pointed a gun at T. Burston, S.D.C. complied with Brooks’s instructions to move the car.  S.D.C. got into the vehicle, slid over to the driver’s side, and backed the vehicle out of its parking spot.  Neither of the Burstons nor Dean actually observed S.D.C. pick up Brooks and drive the maroon Dodge away because they were running.  A search of S.D.C.’s house yielded the Glock 21 pistol used by Brooks in the shooting. 

We conclude that evidence of S.D.C.’s presence at the scene, his moving the car at Brooks’s instructions after Brooks had pulled a gun and pointed it directly at T. Burston’s face, his fleeing the scene after the shooting, the inference that he drove the maroon Dodge away from the scene, his possession of the weapon used in the shooting, and the reasonable inference that he transported the weapon from the scene and concealed it in the backpack are all circumstances from which the jury could have concluded beyond a reasonable doubt that S.D.C. solicited, encouraged, directed, aided, or attempted to aid Brooks in committing the aggravated assault of B. Burston. 
See Matson v. State, 
819 S.W.2d 839, 846 (Tex. Crim. App. 1991) (recognizing that in determining the sufficiency of the evidence, appellate court must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any evidentiary conflict in favor of the prosecution, and must defer to that resolution);
 
Bowden v. State
, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982) (op. on reh’g) (holding that the reconciliation of evidentiary conflicts is left exclusively to the jury, who may draw reasonable inferences and make reasonable deductions therefrom).  
After reviewing the record and applying the appropriate standards of review, we hold that the evidence is both legally and factually sufficient to support the jury’s finding that S.D.C. engaged in delinquent conduct by acting as a party with Brooks in committing the offense of aggravated assault with a deadly weapon.  
See Cardenas, 
30 S.W.3d at 389-90; 
Santellan v. State,
 939 S.W.2d 155, 165 (Tex. Crim. App. 1997).  
We overrule S.D.C.’s first and second points.

IV.  Right to Confront Witnesses

In his third point, S.D.C. contends that the trial court erred by refusing to permit his counsel to cross-examine B. Burston about a pending arrest warrant. S.D.C. argues that this denial infringed upon his Sixth Amendment right to confront the witnesses against him.  Defense counsel sought to question B. Burston about a misdemeanor theft conviction and an outstanding arrest warrant issued based on his failure to complete court-ordered labor detail for the misdemeanor offense.  Evidence presented outside the jury’s presence established that B. Burston told the prosecutor handling Brooks’s case about the warrant several weeks before trial, that the prosecutor gave B. Burston advice on how to take care of his obligations regarding the arrest warrant, and that the district attorney’s office never asked that B. Burston be arrested on the warrant.  The trial court permitted questioning regarding the theft conviction, but over defense counsel’s objection refused to permit defense counsel to cross-examine B. Burston concerning the pending arrest warrant.

S.D.C. contends that B. Burston’s pending arrest warrant gave B. Burston a motive to testify for the State or a bias in favor of the State that he should have been permitted to flesh out through cross-examination.  S.D.C. argues that B. Burston was inclined to testify more favorably for the State to avoid being arrested.  The State, S.D.C. argues, was interested in making sure B. Burston was not arrested pursuant to the arrest warrant to avoid damaging its case against him.

The constitutional right to confront witnesses is violated when appropriate cross-examination is limited.  
Carroll v. State,
 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).  A party has wide latitude to cross-examine a witness on all avenues reasonably calculated to expose a motive, bias, or interest for the witness to testify.  
Davis v. Alaska,
 415 U.S. 308, 316-17, 94 S. Ct. 1105, 1110-11 (1974); 
Carroll,
 916 S.W.2d at 497.  The rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only.  
Carroll,
 916 S.W.2d at 497-98.  Evidence that a witness whom the State calls is subject to a criminal charge or is on probation can be used in order to show the bias or interest of the witness in helping the State.  
Moreno v. State,
 22 S.W.3d 482, 486 (Tex. Crim. App. 1999).

The Confrontation Clause does not prevent the trial court from limiting defense counsel’s inquiry into a prosecution witness’s potential bias.  
Delaware v. Van Arsdall,
 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986).  Trial courts retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness’s safety, or interrogation that is repetitive or only marginally relevant.  
Id.
  While the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.  
Id.
  The mere fact that a witness might be on probation or have some otherwise “vulnerable relationship” with the State is not alone sufficient to establish admissibility.  
Carpenter v. State,
 979 S.W.2d 633, 634 (Tex. Crim. App. 1998).  There must be some causal connection or logical relationship between the witness’s vulnerable status and his testimony at trial.  
Id.

Here, B. Burston’s conversation about his outstanding arrest warrant was with the prosecutor handling Brooks’s case.  He was unsure whether he had  informed the prosecutor in this case about the warrant.  The prosecutor informed the court that while she did inform defense counsel of two misdemeanor offenses, she did not inform him of the warrant because she was unaware of it.  The prosecutor B. Burston did speak with informed him only about how to go about paying a fine to clear up the warrant.  There was no evidence of any special deals with the State with regard to the warrant, and there was no evidence tending to establish collusion between B. Burston and the State regarding his testimony in this case.  Nothing indicates that B. Burston expected any favorable assistance or benefit from the State with regard to the warrant or that he testified under any pressure from the State.  
See Juneau v. State,
 49 S.W.3d 387, 390 (Tex. App.—Fort Worth 2000, pet. ref’d) (concluding that defendant’s failure to show witness testified as a result of bias, motive, or ill will was a failure to lay necessary predicate to invoke right of confrontation).

We conclude that defense counsel failed to establish that the cross-examination he sought was reasonably calculated to expose a bias, motive, or interest for B. Burston to testify falsely.  
See Carpenter,
 979 S.W.2d at 635; 
Juneau,
 49 S.W.3d at 390; 
Duncan v. State,
 899 S.W.2d 279, 281 (Tex. App.—Houston [14
th
 Dist.] 1995, pet. ref’d).  Accordingly, we hold that the trial court did not abuse its discretion in disallowing the cross-examination.  We overrule S.D.C.’s third point.

V.  Admission of Evidence

A.  Glock 21 Pistol

In his fourth point, S.D.C. contends that the trial court erred by admitting the Glock 21 pistol into evidence because the State failed to establish a reliable chain of custody.  Although the Texas Rules of Evidence do not specifically address proper chain of custody, Rule 901(a) states that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims. 
Tex. R. Evid.
 901(a); 
Kingsbury v. State
, 14 S.W.3d 405, 407-08 (Tex. App.—Waco 2000, no pet.).  Rule 901 requires only a showing that satisfies the trial court that the matter in question is what the State claims.  
Kingsbury
, 14 S.W.3d at 407-08; 
Garner v. State
, 939 S.W.2d 802, 804-05 (Tex. App.—Fort Worth 1997, pet. ref’d).  Courts have repeatedly held that a chain of custody is established if an officer is able to testify that he or she seized the item of physical evidence, put an identification mark on it, placed it in the property room, and then retrieved the item for trial.  
Stoker v. State
, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), 
cert. denied
, 498 U.S. 951 (1990); 
Anderson v. State
, 504 S.W.2d 507, 510 (Tex. Crim. App. 1974); 
Atkins v. State
, 515 S.W.2d 904, 906 (Tex. Crim. App. 1974)
; Simmons v. State
, 
944 S.W.2d 11, 12 (Tex. App.—Tyler 1996, pet. ref’d)
; Alvarez v. State
, 857 S.W.2d 143, 147 (Tex. App.—Corpus Christi 1993, pet. ref’d).  Proof of chain of custody, however, goes to the weight rather than the admissibility of the evidence.  
Kingsbury
, 14 S.W.3d at 407. Absent evidence of tampering or commingling, theoretical breaches in the chain of custody do not affect the admissibility of evidence.  
Id
.; 
Murray v. State
, 864 S.W.2d 111, 116 (Tex. App.—Texarkana 1993, pet. ref’d); 
Moore v. State
, 821 S.W.2d 429, 431 (Tex. App.—Waco 1991, no pet.).

Here, Officer M. J. Wasko identified the pistol introduced at trial as the pistol found at S.D.C.’s house.  Officer Wasko testified that he was shown and observed the Glock 21 when he arrived at S.D.C.’s home on the morning S.D.C. was arrested.  Pursuant to procedure, officers went back to the station to tag the evidence recovered.  While he did not personally tag the pistol, he was present when the weapon was tagged.  He personally retrieved the pistol from the police property room using the service number that was placed on the offense report and verified that the number he observed placed on the tag matched the numbers used by the property room.  He testified that the Glock 21 admitted into evidence was the same gun that was taken from S.D.C.’s home on February 8 pursuant to the consent to search. 

Officer Wasko identified the pistol offered into evidence at trial as the same pistol taken from S.D.C.’s home and the same pistol he observed being tagged at the police station.  There is no evidence of tampering in this case. Thus, S.D.C.’s chain of custody complaint does not render the trial court’s evidentiary ruling erroneous.  
See Wortham v. State
, 903 S.W.2d 897, 900 (Tex. App.—Beaumont 1995, pet. ref’d) (holding that a question about the chain of custody only affects admissibility upon a showing that an exhibit was tampered with or altered). 
 We hold that the trial court did not abuse its discretion by admitting the Glock 21 into evidence over S.D.C.’s chain of custody objection. We overrule S.D.C.’s fourth point.

B.  Extraneous Evidence of Gang Involvement

In his fifth point, S.D.C. complains that he was denied a fair trial because the State’s witnesses at the adjudication phase made repeated references to extraneous offense evidence concerning his participation in a gang.  His first complaint goes to T. Burston’s direct testimony in response to questioning about whether the police arrived at the scene:

Q. You indicated that he called the police.  Did they arrive?

A. Yes.  There were two Gang force detectives.  They just happened to be in the area because of Wedgewood Click.

S.D.C. also complains about Officer Bates’s introductory testimony that he works for the Fort Worth Police Department’s Gang Enforcement Unit.

To preserve a complaint about the admission of evidence, a party must object at the time the evidence is raised at trial.  
Wilkerson v. State,
 881 S.W.2d 321, 326 (Tex. Crim. App.), 
cert. denied,
 513 U.S. 1060 (1994); 
see also
 
Tex. R. App. P.
 33.1(a); 
Tex. R. Evid.
 103(a)(1).  An objection to the admission of evidence must be specific and must state the grounds of the objection.  
Henderson v. State,
 617 S.W.2d 697, 698 (Tex. Crim. App. [Panel Op.] 1981); 
see also
 
Tex. R. App. P.
 33.1; 
Tex. R. Evid.
 103(a)(1).  Further, the objection must be made at the earliest possible opportunity, 
Martinez v. State,
 867 S.W.2d 30, 35 (Tex. Crim. App. 1993), 
cert. denied,
 512 U.S. 1246 (1994), and must be made every time inadmissible evidence is presented. 
Hudson v. State,
 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).  Any error in the admission of evidence “is cured where the same evidence comes in elsewhere without objection.”  
Id.

The record reveals that S.D.C. failed to object when Officer Bates testified that he worked in the Gang Enforcement Unit.  His only objection with regard to this testimony came sixteen pages later in the record, during redirect examination.  To preserve error, S.D.C. was obligated to object as soon as the basis for the objection became apparent.  See 
Tex. R. App. P.
 33.1(a); 
Tex. R. Evid.
 103(a)(1); 
Lagrone v. State,
 942 S.W.2d 602, 618 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 917 (1997).  S.D.C.’s untimely objection was insufficient to preserve any complaint with regard to Officer Bates’s testimony.

With regard to T. Burston’s complained of testimony, the trial court instructed the jury to disregard the statement.  Generally, an instruction to disregard cures any error in the admission of evidence, unless the evidence was clearly calculated to inflame the minds of the jurors or was of such damning character as to suggest the impossibility of removing the harmful impression from the jurors’ minds.  
Kemp v. State,
 846 S.W.2d 289, 308 (Tex. Crim. App. 1992), 
cert. denied,
 508 U.S. 918 (1993); 
Waldo v. State,
 746 S.W.2d 750, 753 (Tex. Crim. App. 1988); 
Banks v. State,
 955 S.W.2d 116, 119 (Tex. App.—Fort Worth 1997, no pet.).  Here, T. Burston’s testimony that the two gang force officers who arrived at the scene “just happened to be in the area” did not indicate that the officers were at the scene because the offense was gang-related.  Additionally, the State’s question asking about the police arriving at the scene was not designed to elicit any reference to gangs. 

Accordingly, we conclude that the complained of testimony was not so prejudicial that it could not be cured by the trial court’s instruction to disregard.  
See Kemp,
 846 S.W.2d at 308 (holding that instruction to disregard cured statement that the defendant “had recently been released from the penitentiary”); 
Campos v. State,
 589 S.W.2d 424, 427-28 (Tex. Crim. App. [Panel Op.] 1979) (holding that instruction to disregard cured testimony that the defendant was arrested and jailed for an extraneous offense); 
Bridgewater v. State,
 905 S.W.2d 349, 353 (Tex. App.—Fort Worth 1995, no pet.) (holding that use of term “gang” was cured by instruction to disregard); 
Beasley v. State,
 864 S.W.2d 808, 812 (Tex. App.—Fort Worth 1993) (holding that instruction to disregard cured any error after witness testified defendant’s clothes indicated gang membership), 
aff’d,
 902 S.W.2d 452 (Tex. Crim. App. 1995).  We overrule S.D.C.’s fifth point.

VI.  Jury Charge

In his sixth point, S.D.C. contends that the trial court erred by failing to instruct the jury at the adjudication phase that the State must prove all extraneous offenses beyond a reasonable doubt before the jury may consider them.  S.D.C. argues that Officer Bates’s and T. Burston’s testimony, discussed in point five, constituted references to his gang activity, an extraneous offense.

Evidence of an extraneous offense must necessarily involve evidence of prior criminal conduct.  
Harris v. State,
 738 S.W.2d 207, 224 (Tex. Crim. App. 1986) 
(op. on reh’g)
, cert. denied,
 484 U.S. 872 (1987).  To constitute an extraneous offense, the evidence must show a crime or bad act and that the defendant was connected to it.  
Lockhart v. State,
 847 S.W.2d 568, 573 (Tex. Crim. App. 1992), 
cert. denied,
 510 U.S. 849 (1993).  If the evidence fails to show that an offense was committed or that the defendant was connected to the offense, then an extraneous offense is not established.  
Harris,
 738 S.W.2d at 224.

Officer Bates testified that he worked for the Gang Enforcement Unit. With respect to the call for the shooting at the Railridge Apartments, he explained, “We didn’t receive the actual call ourselves.  It wasn’t given to us, but we were close, so we actually responded to that call.”  T. Burston testified similarly, stating that two gang force officers arrived at the scene and that they “just happened to be in the area because of Wedgewood Click . . . .”  This testimony indicated that, while the officers were part of a gang enforcement unit, they responded to the call about the shooting only because they happened to be in the area and close by the Railridge Apartments.  Their testimony did not indicate that S.D.C. was involved in any gang activity or any other extraneous offense.

A jury instruction is not required if the evidence viewed in the light most favorable to the defendant does not raise the issue, 
Dyson v. State,
 672 S.W.2d 460, 463 (Tex. Crim. App. 1984), and the trial court is not required to charge on an issue not raised by the evidence.  
Muniz v. State
, 851 S.W.2d 238, 254 (Tex. Crim. App.), 
cert. denied
, 510 U.S. 837 (1993).  We hold that because the evidence did not raise the issue of an extraneous offense, an instruction to the jury was not required.  
See Green v. State,
 880 S.W.2d 797, 802 (Tex. App.—Houston [1
st
 Dist.] 1994, no pet.) (holding that where evidence did not raise issue of extraneous offense, jury instruction was not required).  We overrule S.D.C.’s sixth point.

VII. Conclusion

Having overruled S.D.C.’s six points on appeal, we affirm the trial court’s judgment of adjudication and disposition.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED: May 8, 2003

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.