Affirmed and Memorandum Opinion filed April 2, 2009








Affirmed and Memorandum Opinion filed April 2, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00933-CR

____________

 

PAULA KECK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 339th
District Court

Harris County, Texas

Trial Court Cause No. 1048824

 



 

M E M O R A N D U M   O P I N I O N

Appellant Paula Keck appeals her conviction for aggregate
theft of $200,000 or more, challenging the sufficiency of the evidence and
claiming ineffective assistance of counsel at trial.  We affirm.

I.  Factual and Procedural Background








Appellant worked for American Residential Services in the
accounting department.  Money flowed into the company in the following manner:
technicians with the company would return from a repair job and log information
about the repair.  The technicians slipped sealed, tamper-proof envelopes containing
money and customer invoices into a locked vault located in the accounting
department.  Accounting personnel then inventoried the envelopes to verify that
the amount of money and checks within each envelope matched the invoices.  Upon
verification that the money (currency and checks) matched the invoices,
accounting personnel generated a batch report, which could not be altered after
it was generated.  Accounting personnel then took the money and batch report to
appellant, who used the batch report, money, and checks to prepare bank
deposits in sealed bags.  A deposit slip for each deposit itemized the contents
of the deposit.  The total on the batch report had to match the bank deposit
slip total.  The bank deposits were stored in a locked cabinet to which
appellant and several others had a key. 

Daily, an armored car courier would retrieve the deposits
and sign the company=s receipt book, acknowledging the
pick-up.  The courier then would deliver the deposit to the bank, where the
deposit would be verified.  If the bank discovered an error, the bank would
notify the company.  Appellant handled the bank reconciliations and entered the
information in the company=s general ledger.[1] 
Three people, including appellant, had authority to take corrective action and
make journal entries in the general ledger to reconcile the cash balance
between accounting records and the bank balance. 








In late 2002, the company conducted an internal audit of
the Houston office accounting records.[2] 
The auditors initially uncovered problems with incomplete bank reconciliations.[3] 
In the company=s investigation, auditors researched forty-eight
months of bank statements and every itemized detail of every deposit made for
four years, from April 1999 to February 2003.  Auditors researched the bank statements,
batch reports, deposit slips, and journal entries to compare the information to
the bank reconciliation and general ledger.  The examination revealed that the
company was missing $930,000.[4] 
The company reported the loss to the State for prosecution.  In preparation for
prosecution, the company ordered copies of every check deposited and compared
every check to every batch report.

The auditors uncovered several theft schemes which involved
inaccurate deposit slips.  The audit revealed that numerous bank deposit slips
had been altered and, on a regular basis, cash had been removed from the
deposits in a Alapping@ scheme.

Over the course of 148 transactions, deposits were made
using deposit slips denoting the correct amount of the deposit; however, the
corresponding items within the deposit did not match items listed on the
deposit slip.  Rather, the cash was removed from the deposit and replaced with
checks to cover the amount of missing cash.[5] 
By tracking the Arevenue flow@ to the company
after the batch reports were generated, auditors ruled out other potential
suspects.[6] 
Investigators determined that only appellant had access to the deposits.








A fraud examiner with the Harris Count District Attorney=s Office
investigated the case.  Based on appellant=s bank records,
the fraud examiner believed appellant may have paid her bills with cash,
because the records did not reflect regular activity at regular intervals. 
According to the examiner, between December 1998 through July 2003, appellant
deposited more than $68,435 in cash to her bank account; the deposits appeared
to coincide with large expenditures.  The examiner believed the large deposits
were not consistent conduct for someone who received income from a legitimate
job with payments at regular intervals.  At trial, the examiner confirmed that
no evidence of the technician=s invoices was necessary to track the
scheme because the scheme dealt only with money received by the company after
the batch reports were generated.  In following the flow of revenue, the
examiner ruled out other suspects because of the batch report and deposit
slips: once a deposit ticket is made that matches the amount on a batch report,
the deposit is then entered into the company=s records and no
one other than appellant had access to the money.  According to the examiner,
if money had been taken after the deposit slip was made, the checks from other
various deposits could not have been pulled from the lockbox where appellant
kept the money and deposit slips.  Ultimately, the examiner determined three
ways that money was missing: (1) whole deposits did not go to the bank; (2)
deposits were made where checks replaced removed currency; and (3) deposits
were made without currency.

Appellant was charged with aggregate theft, to which she
pleaded Anot guilty.@  A jury trial
followed in which the jury found appellant guilty.  The trial court sentenced
appellant to thirty-five years= confinement and levied a $10,000 fine. 
Appellant now challenges her conviction.

II.  Issues and Analysis

A.      Is the evidence legally and
factually sufficient to support appellant=s conviction?








In evaluating a legal‑sufficiency challenge, we view
the evidence in the light most favorable to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether
we, as a court, believe the State=s evidence or
believe that appellant=s evidence outweighs the State=s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses= testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

In contrast, when evaluating a challenge to the factual
sufficiency of the evidence, we view all the evidence in a neutral light and
inquire whether we are able to say, with some objective basis in the record,
that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great
weight and preponderance of the evidence contradicts the jury=s verdict.  Watson
v. State, 204 S.W.3d 404, 414B17 (Tex. Crim.
App. 2006).  It is not enough that this court harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence, and this court cannot declare that a conflict in the evidence
justifies a new trial simply because it disagrees with the jury=s resolution of
that conflict.  Id. at 417.  If this court determines the evidence is
factually insufficient, it must explain in exactly what way it perceives the
conflicting evidence greatly to preponderate against conviction.  Id. at
414B17.  Our
evaluation should not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  See
Fuentes, 991 S.W.2d at 271. 








A person commits the offense of theft if that person Aunlawfully
appropriates property with intent to deprive the owner of the property.@  Tex. Penal Code Ann. ' 31.03(a) (Vernon
Supp. 2008).  Appropriation of property is unlawful if it is Awithout the owner=s effective
consent.@  Id. ' 31.03(b)(1).  A
theft is a first-degree felony offense if the value of the property stolen is
$200,000 or more.  Id. ' 31.03(e)(7).  When, as in this case, the
amounts are obtained by theft Apursuant to one scheme or continuing
course of conduct, whether from the same or several sources, the conduct may be
considered as one offense and the amounts aggregated in determining the grade
of the offense.@  Id. ' 31.09 (Vernon
2003) (governing aggregation of amounts involved in theft).

In this case, the incidents of theft were well-documented
over several hundred transactions, showing how the bank deposits did not
correspond to items listed in the deposit slips.  See Green v. State,
880 S.W.2d 797, 800 (Tex. App.CHouston [1st Dist.] 1994, no pet.); see also Harrell v. State,
834 S.W.2d 540, 543 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d) (connecting the accused to eighty-three
incidents).  Between April 1999 and February 2003, the company suffered a loss
of $930,000 as a result of numerous altered bank deposit slips without the
company=s consent.  Multiple witnesses
testified that only appellant had the access to the bank deposits necessary to
effect the theft, sufficiently connecting appellant to each transaction.  See
Green, 880 S.W.2d at 800 (connecting the accused to each incident in some
way); see also Reuter v. State, No. 01-04-00936-CR, 2006 WL 348146, at
*3 (Tex. App.CHouston [1st Dist.] Feb. 16, 2006, no pet.) (mem. op., not designated for
publication).  The fraud examiner explained how she foreclosed the possibility
of other potential suspects by focusing on the batch report amount and the bank
deposit slips.  The fraud examiner testified that even if someone else had
access to the bank deposits, if money were taken out, checks from various other
deposits could not have been placed in the deposit because they were locked in
a box.  








Appellant
points to the following conflicting evidence that she claims renders the
evidence legally and factually insufficient because she argues this evidence
cannot be reconciled with a Aguilty@ verdict:

$                  
Testimony from the defense expert
who opined that the scheme involved revenue fraud arising from inflated invoices, fraudulent
invoices, fraudulent entries in the computer system, and the underlying records
that were purposefully destroyed

$                  
Testimony from
Gary Leuck, an assistant comptroller, that no Atech log@ documentation exists to support a claim for missing cash

$                  
Leuck=s testimony that from 1999 to 2003,
the bank reported no significant discrepancies in bank reconciliation that
raised concern

$                  
Leuck=s testimony that he never conversed
with Wayne Mardis, appellant=s supervisor, about appellant=s reconciliation work

$                  
No handwriting
expert testified regarding the handwriting on the bank deposit slips, and the
acknowledgment that the company did not hire a handwriting expert

$                  
None of the
missing funds were traced to appellant, coupled with undisputed evidence that
she had no Aundisclosed assets,@ accordingly, there was no Asmoking gun@

$                  
The defense
expert=s testimony of another compelling
alternative theory of another thief, Wayne Mardis, who had control over all of
the necessary accounting functions to perpetrate fraud

$                  
Undisputed
evidence of nine alterations of accounting records by Mardis after appellant
left the company

$                  
Thefts from the
bank deposits occurred on days when appellant was not in the office, according
to the company=s own time records








Appellant points to evidence of an alternative hypothesis
that Mardis committed the theft as Arevenue fraud,@ but the existence
of an alternate hypothesis is not determinative.  See Wilson v. State, 7
S.W.3d 136, 141 (Tex. Crim. App. 1999); Goodman v. State, 66 S.W.3d 283,
287 (Tex. Crim. App. 2001).  Although appellant=s expert testified
to his belief that Mardis committed the theft, the fraud examiner explained how
she ruled out Mardis and others as suspects.  Moreover, the examiner uncovered
the theft schemes by following the revenue flow from the batch reports and
deposits, and the defense expert agreed that a Alapping@ scheme existed. 
It is the jury=s role as factfinder to consider the credibility of
the witnesses and determine the weight to give their testimony.  Cain v.
State, 958 S.W.2d 404, 407 & n.4(Tex. Crim. App. 1997).  Similarly, it
is within the jury=s province to accept or reject an
alternative hypothesis.  See Goodman, 66 S.W.3d at 287.  We presume the
jury resolved conflicts in the evidence in favor of the prevailing party.  See
Turro, 867 S.W.2d at 47. 

Appellant complains that no Atech log@ documentation
supports a theory of missing cash and her supervisors did not present concerns
about her work between 1999 and 2003.[7] 
However, the tech logs were not necessary to support appellant=s conviction in
light of (1)  evidence of altered deposit slips and bank deposits, which were
based on the batch report amount, and (2) testimony that once the technicians
turned in money, the amount was applied to each batch report and given to
appellant along with the cash.  Furthermore, the fraud examiner explained that
any missing Atech logs@ were not an
obstruction to her investigation.  The jury was free to believe or disbelieve
this testimony.  See Sharp, 707 S.W.2d at 614.  Appellant has not
demonstrated how any of this evidence affects the sufficiency of the evidence
presented.  See Wilson, 7 S.W.3d at 141.








As for appellant=s complaint that
no handwriting expert verified the handwriting on the deposit slips, appellant=s long-time
supervisor confirmed that the handwriting on the deposit slips belonged to
appellant.  Handwriting may be properly authenticated by way of non-expert
testimony as to its genuineness based upon the non-expert=s familiarity of
the handwriting acquired independently of the litigation.  See Tex. R. Evid. 901(b)(2).  Furthermore,
authorship may be established circumstantially, as in this case, with testimony
that only appellant had access to the bank deposits.  See Soria v. State,
933 S.W.2d 46, 60 (Tex. Crim. App. 1996) (requiring only a sufficient
connection to establish that a drawing without a signature found in the accused=s cell proved the
accused was the author or creator); see also Reuter, 2006 WL
348146, at *3 (providing that circumstantial evidence is enough to support the
jury=s verdict even
absent handwriting analysis).

Although appellant complains that some of the thefts
occurred on days when she was not at the company, the jury heard testimony that
appellant may have initiated a transaction on one day, but the deposit at the
bank may have occurred on a different day for a number of reasons, such as the
courier was late picking up the deposits.  Furthermore, appellant=s own expert
explained that appellant often signed courier slips before a pick-up to save
time.  As a result, the jury was free to determine the weight and credibility
such testimony held.  See Cain, 958 S.W.2d at 407.

Finally, even though appellant claims there was no Asmoking gun@ in that none of
the funds were traced to her, lack of direct evidence does not render the
evidence insufficient.  See Kutzner v. State, 994 S.W.2d 180, 184 (Tex.
Crim. App. 1999).  Other evidence suggested that large cash deposits in
appellant=s bank account coincided with large expenditures and
that she may have paid her personal bills in cash.  Appellant=s own son
testified that appellant gambled and he was unsure how much she gambled.  








Having reviewed the record evidence in the light most
favorable to the verdict, we conclude a rational trier of fact could have found
appellant guilty of the elements of aggregate theft beyond a reasonable doubt. 
See McDuff, 939 S.W.2d at 614; Green, 880 S.W.2d at 800; see
also Reuter, 2006 WL 348146, at *4.  Furthermore, in evaluating
the evidence in a neutral light, we cannot say with some objective basis in the
record, that appellant=s conviction is Aclearly wrong@ or Amanifestly unjust@ or that the great
weight and preponderance of the evidence contradicts the verdict.  See
Watson, 204 S.W.3d at 414B17; see also De la Fuente v. State,
264 S.W.3d 302, 319B20 (Tex. App.CSan Antonio 2008,
pet. ref=d) (concluding
evidence was factually sufficient to support aggregate theft conviction). 
Therefore, we conclude the evidence is legally and factually sufficient to
support the conviction, and we overrule appellant=s first issue.[8]

B.      Did
appellant receive ineffective assistance of counsel?

In her second issue, appellant complains she received
ineffective assistance of counsel, alleging numerous errors committed by her
trial counsel in the guilt-innocence phase and the punishment phase of trial. 
Appellant stated in her appellate brief that the record is Aonly slightly
developed which might go to show any deficient performance on the part of trial
counsel.@  As such,
appellant indicates that based on the record presented, she is unable to meet
the first prong of the Strickland standard, stating Athe first prong of
the Strickland standard test has clearly not been met.@  See
Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L.
Ed. 2d 674 (1984) (setting forth two-pronged standard to prove
ineffective assistance of counsel).  Appellant has informed this court of her
intention to seek recourse via an application for writ of habeas corpus.  The
State argues that this issue should be overruled, A[b]ecause
Appellant admits she has no grounds for her ineffective assistance of counsel
claim.@ 








To the extent appellant is urging any ineffective-assistance
claim in this appeal, appellant has failed to adequately brief the issue.  To
present an issue for appellate review Athe brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.@  Tex. R. App. P. 38.1(h).  Appellant has not cited any authority in
support of her complaints of deficient counsel.  See Cardenas v. State,
30 S.W.3d 384, 393 (Tex. Crim. App. 2000). In her brief, appellant sets forth
the standard of review and classifies her counsel=s conduct as
erroneous in numerous instances at trial, but conclusory statements containing
no citations to authority present nothing for appellate review.  King v.
State, 17 S.W.3d 7, 23 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d); see also Vuong v. State, 830
S.W.2d 929, 940 (Tex. Crim. App. 1992).  Accordingly, we hold that to the
extent appellant is urging an ineffective-assistance claim in this appeal, she
has waived error.  We overrule appellant=s second issue. 

Having overruled appellant=s two issues on
appeal, we affirm the trial court=s judgment.

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

Panel consists of Justices Frost, Brown, and Boyce.

Do Not Publish C Tex. R. App. P.
47.2(b).

 









[1]  Through a subsequent 2002 audit of the company=s accounting records, appellant=s supervisor learned that the reconciliations
appellant conducted involved an incorrect method of verifying inner-company
activities with bank information instead of the correct method of verifying the
bank information with the general ledger.  The supervisor learned that
appellant failed to make a number of entries in the general ledger.





[2]  In January 2003, appellant took an approved medical leave for a couple
of weeks.  In her absence, her supervisor handled bank reconciliations.  The
supervisor attempted to contact her regarding some discrepancies in the
reconciliations, but she did not return the supervisor=s calls.  After her leave ended in February 2003, appellant
returned to work for several days; when she left, she did not return again.





[3]  Based on the bank reconciliations, auditors
initially sought details about discrepancies between amounts in accounting
records that were not yet reflected in bank records.  Appellant=s supervisor attributed any discrepancies to
improperly recording bank reconciliations in the wrong categories. 





[4]  Evidence at trial indicated that the loss amounted
to approximately $876,785.87





[5]  For instance, in a September deposit, $2,971.17 in
cash was removed.  The reduction was concealed with checks from an earlier
September deposit totaling the same amount so that the correct amount of
deposit went to the bank and the theft went undetected. 





[6]  By examining numerous deposits, auditors determined
that the missing cash was not included in subsequent deposits; however, all
checks eventually were deposited except for certain checks totaling $20,000. 
Auditors did not find any ledger entries to offset any discrepancy between the
deposit slips and the bank statements.  When auditors presented the deposit
slips to appellant=s supervisor, he confirmed the slips contained
appellant=s handwriting.  The supervisor also found a number of
shredded deposit slips in appellant=s
office after appellant=s employment was terminated.  The shredded slips, when
pieced together, contained appellant=s
handwriting that auditors traced back to cash-only deposits in which money was
taken.





[7]  The parties referred to a Atech log@ as
an invoice log that technicians filled out after completing a repair job
listing the invoice, customer=s address, and
amount collected for the repair.





[8]  Because we conclude the evidence is legally and
factually sufficient to support appellant=s
conviction, we do not reach the merits of appellant=s argument that we should apply a harm analysis under
Texas Rule of Procedure 44.2(b).