Curtis Bill DUNCAN, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–93–00166–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 1995.

Rehearing Overruled May 4, 1995.

Discretionary Review Refused
Aug. 23, 1995.

Geoffrey W. Hutson, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before LEE, ANDERSON and SEARS (sitting by Assignment), JJ.

**OPINION**

ANDERSON, Justice.

Curtis Bill Duncan entered a plea of not guilty to the offense of aggravated robbery. TEX.PENAL CODE ANN. § 29.03(a)(2) (Vernon Supp.1994).[1] The jury found Duncan guilty and, based on a finding that a deadly weapon was used and exhibited, sentenced him to twelve years confinement in the Texas De-

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

partment of Criminal Justice—Institutional Division. In two points of error, Duncan challenges the trial court's decisions preventing his cross-examination of State's witness Jeffrey Scott King regarding his deferred adjudication, and denying his motion for a continuance when a witness subpoenaed by the State failed to appear at trial. We affirm.

The facts, viewed in the light most favorable to the verdict, follow. On August 2, 1980, Duncan, Timothy McGee, Teddy Rowe, and Jeffrey Scott King planned to rob Kleber Warren Wade. Duncan and his accomplices knew Wade had received his veteran's disability check, and had cashed the check that afternoon.

King drove Duncan, McGee, and Rowe to Wade's trailer home. Armed with a sawed-off shotgun, McGee and the three men pulled women's stockings over their faces. After forcing their way into the trailer, a struggle ensued. King, Rowe, and Duncan fled from the trailer, leaving McGee behind. As the get-away van pulled from the scene, McGee intercepted the vehicle and jumped in yelling, "I shot him, I shot him." The men split the proceeds of the crime, approximately $80.00, and disposed of the shotgun. Two days later, Wade's body was found in the trailer. He had been shot by a shotgun and died from a massive abdominal wound.[2]

■ In his first point of error, Duncan claims the trial court erred by not allowing him to confront and cross-examine Jeffrey Scott King about his deferred adjudication for an unrelated aggravated assault. Appellant argues that the court's refusal to allow him this line of questioning violated his federal and state constitutional right to confront witnesses. Duncan contends that the constitutional right of confrontation allows an accused the opportunity to delve into a witness' possible motives for testifying against a defendant; and, he further argues that a cross-examination of King about his deferred adjudication would have established the witness' motive for testifying favorably for the State. Appellant also claims that cross-examination would have shown King's testimony was un-

reliable because the witness was under undue pressure from the State and feared the possibility of future detention. Finally, appellant argues that rule 609 of the Rules of Criminal Evidence provides that evidence of a witness's prior criminal conviction is admissible for impeachment of the witness' credibility. We disagree.

In 1993, The Court of Criminal Appeals held, "denying a defendant the right to impeach a witness [under Rule 609] on the basis of the witness' deferred adjudication probation does not deny the defendant his constitutional right of confrontation." *Jones v. State*, 843 S.W.2d 487, 496 (Tex.Crim.App. 1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993) (citing *Collins v. State*, 780 S.W.2d 176, 196 (Tex.Crim.App. 1989) (opinion on court's own motion for rehearing), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990)).

The essential policy underlying the Sixth Amendment right to confrontation is to give the accused the opportunity to cross-examine the witnesses against him. *Harris v. State*, 642 S.W.2d 471, 476 (Tex.Crim.App.1982) (citing *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). The United States Supreme Court has consistently found that the jury is entitled to see the whole picture involving a witness testifying against the accused. The admission that a witness has been accused of or incarcerated for a crime may be pertinent to show that his

> testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of [government who are] conducting the present prosecution.... Even if the witness were charged with some other offense ..., [a defendant would be] entitled to show by cross-examination that his testimony was affected by fear or favor growing out of his detention."

*Alford v. United States*, 282 U.S. 687, 693, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931).

*Davis v. Alaska*, reiterated the essential nature of unrestricted cross-examination by

---

2. Duncan was also indicted for the offense of murder. Tex.Penal Code Ann. § 19.02 (Vernon Supp.1994). The State abandoned the murder paragraph of the indictment at trial.

an accused of the witnesses against him, and specifically for the purpose of impeachment.

> Cross-examination is the principle means by which the believability of the witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

*Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

■ Duncan was entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive for King to testify falsely. *Lewis v. State*, 815 S.W.2d 560, 565 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992). However, in *Lewis*, and here, appellant does not explain, nor are we able to discern, how cross-examination of King about his deferred adjudication status could reveal any reason for the witness to misrepresent Duncan's role in the robbery and murder. Nor is it apparent from King's testimony on direct examination that such an inquiry would be justified. Indeed, appellant admits in his brief that King did not appear hostile or prejudiced toward appellant, nor was it patently obvious that the witness had a continuing relationship with the criminal justice system.

■ To invoke his right to question a witness about deferred adjudication a defendant must show the witness testified against him as a result of bias, motive or ill will emanating from the witness' status of deferred adjudication. *Callins*, 780 S.W.2d at 196. In *Davis*, the petitioner was able to show that the witness might have been subject to undue pressure from the police and made his identification of petitioner under fear of possible probation revocation. This showing by the petitioner overcame the State's asserted

interest in preserving the confidentiality of juvenile delinquency proceedings. In this case, however, Duncan failed to make any showing that King testified against him as a result of bias, motive or ill-will stemming from his status of deferred adjudication. Thus "Appellant has failed to lay the necessary predicate that would invoke the right of confrontation." *Callins*, 780 S.W.2d at 196. *See Mutscher v. State*, 514 S.W.2d 905 (Tex. Crim.App.1974) (the failure to develop what the witness' testimony would have been on cross-examination was fatal to the ground on appeal because the record did not indicate in what manner a pending Federal indictment might possibly affect the witness' testimony in Mutcher's State prosecution.)

King was on deferred adjudication for an offense unrelated to the robbery and murder of Wade.[3] So long as the deferred adjudication probationer follows the terms of his probation, the State has no hold over him. Upon expiration of his supervision period, the judge must dismiss the proceedings against the defendant. See TEX.CODE CRIM. PROC.ANN. art. 42.12 § 5(c).

The trial court did not abuse its discretion in excluding the cross-examination of Mr. King on this topic. The record shows nothing to indicate that King's testimony was the result of any bias, motive or ill will directed against appellant. There is no evidence that King's deferred adjudication status may have exposed him to pressure from the prosecution to testify favorably for the State. King's testimony reveals that: he remembered what happened that night and who was there, no promises had been made to him by the State, and that no one made him implicate Duncan.

■ Neither was Duncan entitled to elicit the testimony from King about his deferred adjudication under rule 609 of the Texas Rules of Criminal Evidence. TEX.R.CRIM. EVID. 609. That Rule permits a witness who has been *convicted* of a crime to be impeached with evidence of that crime.[4] A

---

3. Mr. King was incarcerated for fifteen months as a result of his involvement in the robbery and murder of Wade. By the time of Duncan's trial in 1993, Mr. King had been out of prison detention for that crime for more than 10 years.

4. TEX.R.CRIM.EVID. 609(a) provides:
   (a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record but only if the crime was a

person on probation has been convicted, and punishment assessed, but the sentence probated. A person on deferred adjudication, however, has not been finally convicted of the crime of which he is accused. At the time of his testimony against Duncan, King was on deferred adjudication; there had been no adjudication of guilt and no final conviction. Absent a conviction, Rule 609 does not apply and evidence of King's deferred adjudication status must be excluded for impeachment purposes. We overrule Duncan's first point of error.

In his second point of error, Duncan argues the trial court erred in denying his motion for continuance when Teddy Rowe, a co-defendant in the robbery/murder of Wade, and a witness subpoenaed by the State, failed to appear at trial. Duncan never filed a motion for new trial; therefore this issue is not presented for review. *Taylor v. State,* 612 S.W.2d 566, 569 (Tex.Crim.App.1981) (motion for new trial necessary to preserve error where trial court denies motion for continuance based on non-appearance of witness). We overrule Duncan's second point of error and affirm the judgment.

LEE, J., sitting for HUDSON, J.

felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.