Kenneth Duane JUNEAU, Appellant,

v.

The STATE of Texas, State.

No. 2-98-622-CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 12, 2000.

Discretionary Review Refused
April 18, 2001.

---

26. *See id.* § 156.301.

27. *See* Tex.Fam.Code Ann. §§ 156.302, 153.256 (emphasis added).

James Teel, Robert Ford, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, C. James Gibson, Sharon Johnson, Stuart Oliphint, Asst. Crim. Dist. Attys., Fort Worth, for Appellee.

PANEL F: DAUPHINOT, RICHARDS, and HOLMAN, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

### I. INTRODUCTION

Appellant Kenneth Duane Juneau was convicted of aggravated assault and sentenced to 45 years' confinement as a repeat offender. He appeals arguing that the jury charge was erroneous and that the trial court erred in not letting him impeach a witness. Finding no reversible error, we affirm.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Henry Taylor was at a local bar in Fort Worth and was "grabbing" female customers. Taylor was visibly drunk. Appellant approached a bouncer in the bar, James Erwin, and told Erwin that he had retired as a lieutenant colonel from the Special Forces and that Erwin "needed to do something about [Taylor] before he [Appellant] did." Erwin told Taylor to stop, and Taylor complied for a short while. However, Taylor later resumed his inappropriate behavior, and Erwin asked him to leave the bar. Taylor went outside and was hanging on to a pole to keep from falling down. Appellant quickly came out of the door to the bar and hit Taylor "with everything he had." Roy Rea, who saw Appellant hit Taylor, testified that Appellant hit Taylor in the throat. Taylor fell backward and hit the back of his head on the wheel rim of a car.

After the police arrived, they found Appellant crouched behind a parked car watching the ambulance. Appellant told police that he was not involved. Although Taylor was taken to the hospital, he died from a hematoma that was caused by his head hitting the wheel rim.

Appellant was charged with aggravated assault with a deadly weapon, causing serious bodily injury. Appellant requested that the court charge the jury on criminally negligent homicide, but the trial court denied the request and only charged the jury on aggravated assault. The jury found Appellant guilty of aggravated assault causing serious bodily injury, but found the deadly weapon allegation to be untrue. The trial court sentenced Appellant to 45 years' confinement.

### III. IMPEACHMENT EVIDENCE

■ In his second point, Appellant argues that the trial court erred in not allowing him to impeach Rea with the fact that he was on deferred adjudication community supervision for burglary of a habitation. Rule 609 states that a party may impeach a witness with "evidence that the witness has been convicted of a crime."[1] Deferred adjudication is not a conviction, and denying impeachment on this basis does not violate a defendant's constitutional right of confrontation.[2]

■ Although deferred adjudication is not admissible under rule 609, it is admis-

---

[1]. Tex.R.Evid. 609(a).

[2]. *See Jones v. State*, 843 S.W.2d 487, 496 (Tex.Crim.App.1992), *cert. denied*, 507 U.S.

1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).

sible to show a witness's bias, motive, or ill will emanating from the witness's status of deferred adjudication.[3] To invoke this right, however, Appellant must make some showing that Rea's version of the facts might be a result of his deferred adjudication status.[4] For example, Appellant could show that Rea might have been subject to undue pressure from the police and testified to the facts of the aggravated assault under fear of possible revocation.[5] Appellant has failed to make a showing that Rea testified as a result of bias, motive, or ill will. Thus, "Appellant has failed to lay the necessary predicate that would invoke the right of confrontation."[6] Accordingly, the trial court did not abuse its discretion in excluding the cross-examination of Rea on this topic. We overrule point two.

## IV. LESSER INCLUDED OFFENSE INSTRUCTION

■ In his first point, Appellant contends that the trial court erred in denying his request for a charge on criminally negligent homicide.

To determine whether a charge on a lesser included offense is required, we must first address the preliminary question of whether the offense that is the subject of the proposed charge is in fact a lesser included offense of the primary offense charged. To answer this question, we look to article 37.09 of the code of criminal procedure, which states that an offense is a lesser included offense if:

(1) it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.[7]

If we determine that article 37.09 is not satisfied, our inquiry ends.

Under the facts of this case, therefore, we must decide whether criminally negligent homicide is a lesser included offense of reckless aggravated assault with serious bodily injury. The elements of aggravated assault relevant here are:

(1) a person

(2) commits an assault

(3) that causes serious bodily injury.[8]

A person commits an assault if the person intentionally, knowingly, or recklessly causes bodily injury to another.[9] "Bodily injury" is defined as "physical pain, illness,

3. See Callins v. State, 780 S.W.2d 176, 196 (Tex.Crim.App.1989) (op. on reh'g), cert. denied, 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990).

4. See id.

5. See Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

6. Callins, 780 S.W.2d at 196; see also Duncan v. State, 899 S.W.2d 279, 281 (Tex.App.— Houston [14th Dist.] 1995, pet. ref'd).

7. Tex Code Crim.Proc.Ann art. 37.09 (Vernon 1981).

8. See Tex.Penal Code Ann. § 22.02(a)(1) (Vernon 1994); Rocha v. State, 648 S.W.2d 298, 301 (Tex.Crim.App.1983) (op. on reh'g).

9. See Tex.Penal Code Ann. § 22.01(a)(1) (Vernon Supp.2000).

or any impairment of physical condition." [10] "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." [11]

■ The elements of criminally negligent homicide are:

(1) a person
(2) causes the death
(3) of an individual
(4) by criminal negligence. [12]

■ A criminal homicide, whether it be murder, manslaughter, or criminally negligent homicide, requires that the actor "caus[e] the death" of an individual. [13] An assaultive offense, on the other hand, whether it be simple or aggravated, requires that the actor "caus[e] bodily injury" to another. [14] An assault is an aggravated assault when the actor causes "serious bodily injury," as that term is defined in section 1.07(a)(46). [15] Although the legislature has defined serious bodily injury as an injury that causes death or a risk of death, death is not an element of aggravated assault causing serious bodily injury. Death is, rather, a *method of proving* serious bodily injury, the aggravating element. Indeed, the court

of criminal appeals has held that "[w]hen a person *recklessly causes the death* of an individual, the offense is *manslaughter*, an offense which lies between murder and aggravated assault." [16] While it is well-settled that aggravated assault may be a lesser included offense of homicide, the reverse is not true. [17] In fact, we can find no case holding that a homicide offense may be a lesser included offense of an assault. [18]

Furthermore, simply to replace "serious bodily injury" with "death" in section 22.02(a)(1) would effectively obliterate the offense of aggravated assault entirely because every assault that results in a death would thereby be a criminal homicide. In *Garrett v. State*, the Court of Criminal Appeals stressed this important difference between homicide and aggravated assault when it held that a murder prosecution under the felony-murder rule could not be based on the felony of aggravated assault on the deceased:

To allow this would make murder out of every aggravated assault that results in a death. It would relieve the State of the burden of proving an intentionally or knowingly caused death in most murder cases because murder is usually the result of some form of assault. Such a result has been rejected in the vast ma-

---

10. *Id.* § 1.07(a)(8) (Vernon 1994).

11. *Id.* § 1.07(a)(46).

12. *See id.* § 19.05(a) (Vernon 1994).

13. *Id.* § 19.01(a); *see id.* §§ 19.02(b), 19.04(a), 19.05(a); *see also Lugo–Lugo v. State*, 650 S.W.2d 72, 80 (Tex.Crim.App.1983) (op. on reh'g) (holding that culpability is attached to the result of death under section 19.01(a)).

14. Tex.Penal Code Ann. § 22.01(a)(1); *see id.* § 22.02.

15. Tex.Penal Code Ann. § 1.07(a)(46).

16. *Jackson v. State*, 992 S.W.2d 469, 475 (Tex. Crim.App.1999) (emphasis added).

17. *See Bergeron v. State*, 981 S.W.2d 748, 750 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd) (holding that aggravated assault is a lesser included offense of murder as defined by statute).

18. *See, e.g., Forest v. State*, 989 S.W.2d 365, 368 (Tex.Crim.App.1999) (holding that a murder defendant is not entitled to an instruction on aggravated assault when the evidence showed him, *at the least*, to be guilty of a homicide).

jority of jurisdictions throughout the United States where it is held that a felonious assault resulting in death cannot be used as the felony which permits application of the felony murder rule to the resulting homicide.[19]

Subarticle (1) of article 37.09, therefore, is inapplicable here because the proof necessary to establish the offense of criminally negligent homicide, namely, that a person caused the death of an individual, does not include the "same or less than all the facts" required to prove aggravated assault, which only requires proof that the actor caused serious bodily injury.

Similarly, we hold that subarticle (2) is not satisfied, because death is clearly not a "less serious injury" than serious bodily injury.[20]

▇▇▇▇▇ Looking now at subarticle (3) of article 37.09, the requisite mens rea for aggravated assault in the instant case is recklessly. The mens rea for criminally negligent homicide is acting with criminal negligence.[21] Reckless conduct involves *conscious* risk creation.[22] Because assault is a result-oriented offense, the actor who acts recklessly is aware of the risk surrounding the result of his conduct, but consciously disregards that risk.[23] Criminal negligence, on the other hand, involves *inattentive* risk creation, in that the actor

ought to be aware of the risk surrounding the result of his conduct.[24] Criminal negligence is, therefore, a lesser culpable mental state than recklessness.[25] The analysis, however, does not end here. Under article 37.09(3), an offense is a lesser included offense if "it differs from the offense charged *only* in the respect that a less culpable mental state suffices to establish its commission."[26] As a result, subarticle (3) does not apply when the culpable mental state is not the only difference.[27] Criminally negligent homicide and aggravated assault differ not only in the mens rea required for each, but also in the result to which this culpability attaches. We therefore hold that subarticle (3) of article 37.09 is not applicable to this case.

Finally, subarticle (4) of article 37.09 is clearly inapplicable because the act of causing another's death does not constitute an attempt to commit aggravated assault.[28]

The offense of criminally negligent homicide does not meet any of the four tests set out in article 37.09 for determining whether an offense is a lesser included offense of the offense charged. Accordingly, we hold that criminally negligent homicide is not a lesser included offense of aggravated assault. It is therefore unnecessary for us to apply the second prong of the *Rousseau* test[29] to determine whether

19. 573 S.W.2d 543, 545 (Tex.Crim.App. [Panel Op.] 1978).

20. *See Jackson,* 992 S.W.2d at 475 (holding that "serious bodily injury" required for aggravated assault is a "lesser form of bodily injury" than death).

21. *See* TEX.PENAL CODE ANN. § 19.05(a).

22. *See Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App.1975).

23. *See* TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1994); *Lewis,* 529 S.W.2d at 553.

24. *See id.* § 6.03(d); *Lewis,* 529 S.W.2d at 553.

25. *See Lewis,* 529 S.W.2d at 553.

26. TEX.CODE CRIM.PROC.ANN. art. 37.09(3) (emphasis added).

27. *See Sample v. State,* 629 S.W.2d 86, 88 (Tex.App.—Dallas 1981, no pet.).

28. *See* TEX.PENAL CODE ANN. § 15.01(a) (Vernon 1994).

29. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.) (holding second step requires an evaluation of the evidence to determine whether there is some evidence that would permit a rational jury to find that the defen-

an instruction on criminally negligent homicide was required in this case. It clearly was not.

Because we hold that criminally negligent homicide is not a lesser included offense of aggravated assault under article 37.09, the trial court was correct to deny Appellant's requested charge. We overrule Appellant's first point.

## V. CONCLUSION

Having overruled Appellant's points, we affirm the trial court's judgment.

dant is guilty only of the lesser offense), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *see also Moore v. State,* 969 S.W.2d 4, 8 (Tex.Crim.App.1998).