In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00480-CR
_____

SHERRI LORENE HOLLOWAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 12-07-07393 CR

**MEMORANDUM OPINION**

A jury convicted appellant Sherri Lorene Holloway of intoxication manslaughter, and the trial court sentenced her to twelve years in prison. Holloway challenges her conviction in a single issue, arguing the trial court committed reversible error in failing to allow her to impeach a key state witness by showing that at the time of trial the witness was serving deferred adjudication probation.

1

## Background

On or about February 24, 2011, Holloway was driving her vehicle down State Highway 105 in Montgomery County, Texas when her vehicle crossed the centerline of the highway and collided head-on into a vehicle operated by Kenneth Darnell Buffington, who was killed on impact. While administering medical treatment to Holloway for the injuries she sustained in the collision, a nurse found a plastic bag on Holloway's person, which contained numerous prescription drug tablets. The tablets were analyzed and found to contain hydrocodone, carisoprodol (brand name Soma), and diazepam (brand name Valium). A blood sample taken from Holloway revealed various concentrations of hydrocodone, carisoprodol, diazepam, and metabolites of diazepam. Holloway was charged with intoxication manslaughter and manslaughter.

At trial, the State presented two witnesses that testified they observed Holloway driving her vehicle outside of her lane of traffic on Highway 105 near Cut and Shoot, Texas, shortly before Holloway crossed the centerline and collided with Buffington's vehicle. The State first presented Maria Blaschka. Blaschka testified that she and her family were traveling on Highway 105 in the eastbound lane of traffic on February 24, 2011. Her husband was driving, while she and her daughter were passengers. She testified that she looked out the back window of

their vehicle and noticed a vehicle behind them that was driving too close to their vehicle and almost hit the back of their vehicle. Blaschka testified that she observed the same vehicle travel over the centerline of the roadway into the westbound lane. She observed Holloway's vehicle over a distance of four to five miles. She testified that she observed an 18-wheeler traveling west move out of the way to avoid being hit by Holloway's vehicle. She also observed Holloway force another vehicle off the westbound roadway. She decided that Holloway's vehicle posed a danger and called 911. However, before she was able to make the call, Holloway's vehicle crashed into Buffington's vehicle, which was traveling in the westbound lane. Blaschka did not observe the actual collision, but recalled that her husband was looking in the rearview mirror and he exclaimed, "She just hit that white car." She witnessed debris scatter from the crash scene.

Teresa Lynn Simmons testified that she witnessed Holloway collide with Buffington's vehicle. Simmons testified that on February 24, 2011, she was traveling east on Highway 105 behind Holloway's vehicle. She first noticed Holloway's vehicle swerving within the eastbound lane. She testified Holloway's vehicle narrowly missed a culvert and mailboxes and then crossed the yellow line and entered the turn lane. She recalled that Holloway pulled back into the correct lane, but continued to weave within her lane. She testified that Holloway continued

3

to weave in and out of the east and westbound lanes of traffic and that the further along they drove, the worse her weaving became. Simmons witnessed another vehicle in the westbound lane leave the roadway to avoid colliding with Holloway's vehicle. Simmons testified that further down the road she observed Holloway enter the westbound lane of traffic again and, this time, her vehicle hit Buffington's westbound vehicle head-on.

## Limitation on Cross-Examination

Holloway argues the trial court erred in not allowing her to cross-examine Simmons about her deferred adjudication status. During Simmons's direct testimony, the trial court excused the jury and then questioned Simmons about her criminal history. Simmons informed the court that she had previously received deferred adjudication for possession of a controlled substance approximately eight years earlier. She also informed the court that she had been on deferred adjudication probation for a criminal trespass offense for the three months preceding the trial. The criminal trespass offense occurred in San Jacinto County, Texas. She told the court that San Jacinto County had not filed a motion to adjudicate her guilt. After Simmons informed the court of her criminal history, the following exchange took place:

> [DEFENSE COUNSEL]: The defense is going to be asking the opportunity. I believe case law supports when a person is placed on

4

deferred adjudication while the case is pending, that because there was the potential for them to have gotten a deal, that we should be able to cross-examine her on that material.

THE COURT: Did you give her a deal?

[THE STATE]: Her plea arrangement was done prior to her testifying and even me contacting her. It has nothing to do with us at all.

THE COURT: In a separate county?

[THE STATE]: It is in a separate county. It is a misdemeanor. It is not a crime of moral turpitude.

THE COURT: I am not going to allow you to get into that.

The jury was brought back in, and Simmons continued her testimony.

During cross-examination, Holloway's defense counsel questioned Simmons about how she became involved with this case. Simmons testified that the district attorney contacted her several months after the accident. A discussion at the bench ensued wherein Holloway's defense counsel made a confrontation clause objection arguing that Holloway should be allowed the opportunity to cross-examine Simmons about her probationary status. Specifically, Holloway's counsel argued that she believed Simmons had an incentive to testify favorably for the State because she was on deferred adjudication probation. She explained that she understood "that it is in a different county, but deals are struck all the time. And in the event that she was at some point going to be facing a motion to adjudicate, there is a possibility that she could ask for consideration because of her testimony

in this case." The judge overruled the objection. On appeal, Holloway argues the trial court erred in not allowing her to question Simmons about her deferred adjudication status in front of the jury because such testimony possibly shows Simmons was biased or otherwise had an interest in helping the State.

Generally, parties are entitled "to show any relevant fact which would or might tend to establish ill feeling, bias, motive, interest or animus on the part of any witness testifying against him." *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987). The Sixth Amendment of the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The right to confrontation includes the right to cross-examine witnesses. *See Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996) (quoting *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)). This right includes the opportunity to cross-examine witnesses to show that a witness is biased or that the witness's testimony is exaggerated or unbelievable. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010). However, the scope of this right is not unlimited; the trial court has "wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'"

6

*Id*. at 145 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). As such, defense counsel's cross-examination of a witness concerning the witness's potential bias or prejudice does not include the right to cross-examine the witness in whatever way, and to whatever extent, the defense chooses. *Id*.

"Evidence that a witness is on probation, is facing pending charges, or has a prior juvenile record is not relevant for purposes of showing bias or a motive to testify absent some plausible connection between that fact and the witness's testimony." *Id*. at 149. In order for defense counsel to impeach a witness with evidence of pending criminal actions, counsel must establish that the evidence is relevant. *See Carroll*, 916 S.W.2d at 499-501; *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). The proponent of the evidence "must establish some causal connection or logical relationship between the pending charges and the witness'[s] 'vulnerable relationship' or potential bias or prejudice for the State, or testimony at trial." *Carpenter*, 979 S.W.2d at 634. In *Carpenter*, the Court of Criminal Appeals hinted at the type of evidence that could show a causal connection or logical relationship—it might include testimony about the existence of a plea bargain agreement or negotiations, or testimony showing the witness's belief regarding the existence or non-existence of any kind of deal in the pending matter. *Id*. at 635 n.5.

The record in this case fails to establish a causal connection or logical relationship between Simmons's probation status and her trial testimony. There is nothing in the record to show the existence of, or the expectation of, a deal or other favorable treatment in Simmons's case. The record shows that Simmons was on deferred adjudication probation for criminal trespass in an unrelated criminal case that occurred in a different county. The prosecutor informed the trial court that he had "nothing to do with" Simmons's case. The mere fact that Simmons was on probation is not sufficient, by itself, to establish a potential bias or motive to testify. *See Irby*, 327 S.W.3d at 140, 151-52.

Holloway heavily relies on *Maxwell v. State* to support her argument that she should have been allowed to impeach Simmons with evidence that Holloway was on deferred adjudication probation. *See Maxwell v. State*, 48 S.W.3d 196, 200 (Tex. Crim. App. 2001). However, the Court of Criminal Appeals overruled *Maxwell* in *Irby v. State* to the extent it conflicts with *Carpenter v. State*. *See Irby,* 327 S.W.3d at 140, 151-52. Therefore, we conclude that absent a showing of a causal connection or logical relationship between Simmons's probation status and her trial testimony, the trial court did not abuse its discretion in limiting Simmons's cross-examination. *See Juneau v. State*, 49 S.W.3d 387, 389-90 (Tex. App.—Fort Worth 2000, pet. ref'd) (holding the trial court properly limited cross-examination

when the defendant failed to show a causal connection between the witness's deferred adjudication status and his testimony). We overrule Holloway's sole appellate issue.

Because we have overruled Holloway's sole appellate issue, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 4, 2014
Opinion Delivered June 11, 2014
Do not publish

Before Kreger, Horton, and Johnson, JJ.

9