COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| VICTOR MOLINAR, | § | No. 08-19-00126-CR |
| Appellant, | § | Appeal from the |
| v. | § | 34th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | | (TC# 20170D05754) |

## **O P I N I O N**

Victor Molinar appeals from his convictions following a jury trial of one count of continuous sexual abuse of a child under fourteen and one count of indecency with a child by sexual contact. We affirm.

## I.  BACKGROUND

A grand jury indicted Molinar on one count of continuous sexual abuse of a child under 14 (Count I), three counts of aggravated sexual assault of a child (Counts II through IV), and five counts of indecency with a child by sexual contact (Counts V through IX). The indictment charged that Molinar had committed these offenses against two of his granddaughters, K.R. and L.M., who are cousins to each other.[1] At the time of the incidents described by the charging instrument, K.R. was nine years old and L.M. was eight.

---

[1] K.R. is technically not a biological granddaughter but she refers to him as "Grandpa." K.R.'s stepfather, Jeffrey Munoz, is Molinar's stepson.

K.R. lived with her parents and siblings[2] in rooms that were attached to the house of Molinar and his wife, Norma. K.R. testified that, one evening, she was watching television with Molinar and her cousin Steven on a bed in Molinar's room. She fell asleep but awoke when she felt Molinar touching her "where [she] pee[s]." She described how Molinar rubbed her with his finger under her underwear, which caused her to feel pain and a burning sensation. Early in the morning, she returned to the room she shared with her parents and siblings, where she told her mother, Crystal Majorka, that she could not get comfortable because Molinar had touched her.

Majorka similarly testified that, on the night of July 10, 2017, K.R. had asked to spend the night at her grandparents' house with Steven. K.R. returned at about 6 a.m. the following morning and told her that "Grandpa" had touched her on her "middle spot." K.R. also told her that Molinar had put his hand inside her panties and slid it up and down. The following day, Crystal took K.R. to the house of Paula Quintana, who is L.M.'s stepmother.[3] After telling Quintana what K.R. had said about Molinar, Quintana went up to her room and later returned in tears.

Quintana testified that, after speaking with Majorka, she took L.M. into her bedroom and asked if Grandpa Victor had touched her. L.M. said that he had touched her on her "private part" and her "butt," both over and under her clothes, on more than one occasion. L.M. herself testified in more detail to instances of sexual conduct occurring at parties to celebrate Steven's birthday, Malakai's birthday, Grandma Norma's birthday, her father's birthday, and her uncle Jeff's birthday. Grandma Norma's and L.M.'s father's birthdays are in January, Steven's birthday is in February, and Malakai's birthday is in May. The record, however, does not reflect the month of Jeffrey's birthday.

---

[2] K.R. has a stepbrother named Malakai and a half-sister named Karrizma.

[3] L.M.'s father is Ruben Munoz. Ruben Munoz is the brother of K.R.'s stepfather, Jeffrey Munoz.

The conduct L.M. described included Molinar touching her "front part where [she] pee[s]" and her "back part, where [she] poop[s]," kissing her on the mouth, licking her "front part," rubbing her with his finger over and under her clothes, showing her his "private part," and making her move her hand on his "private part."

Joe Zimmerly, a forensic interviewer with the Advocacy Center for the Children of El Paso, testified that he interviewed L.M. on July 13, 2017. L.M. related instances in which Molinar rubbed her private parts with his hand, penetrated her anus and vagina with his penis, touched her breasts, kissed her on the mouth using his tongue, and made her squeeze and rub his penis. Zimmerly noted that L.M. used various family birthday celebrations as reference points.

Before the case was submitted to the jury, the State waived Counts II through VIII of the indictment, as separate offenses, but retained them as lesser included offenses to Count I. The jury returned guilty verdicts on Counts I and IX and the trial court imposed a sentence of 45 years on the former and 10 years on the latter.

## II. ISSUES

In two issues on appeal, Molinar contends that the trial court erred by not permitting him to impeach Quintana with a prior misdemeanor offense involving moral turpitude, and by denying his motion for directed verdict based on an asserted failure of the State to prove that the period between assaultive events was at least thirty days.

## III. STANDARDS OF REVIEW

### A. Evidentiary error

A trial court's evidentiary rulings are reviewed for abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). "[A]s long as the trial court's decision was within the zone of reasonable disagreement

3

and was correct under any theory of law applicable to the case, it must be upheld." *Winegarner*, 235 S.W.3d at 790; *see Beham*, 559 S.W.3d at 478.

## B. Directed verdict

"The standard for review applicable to a motion for directed verdict is the same as that used in reviewing the sufficiency of the evidence." *Havard v. State*, 800 S.W.2d 195, 199 (Tex. Crim. App. 1989) (en banc). That standard requires the reviewing court to view the evidence in the light most favorable to the verdict to determine whether, "based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017) (quoting *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013)); *see Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

## IV. DISCUSSION

### A. Exclusion of impeachment evidence

In Issue One, Molinar asserts that the trial court erred by not allowing him to impeach a witness with a prior charge of making a false report to law enforcement. While cross-examining Paula Quintana, Molinar asked whether it was true that she had pleaded guilty to a charge of making a false report to a police officer. The State promptly objected. The court proceeded to hear the matter outside the jury's presence. Molinar argued that the prior plea was admissible because the offense of making a false report is a crime of moral turpitude; the State argued that it was inadmissible because Quintana had been placed on deferred probation and successfully completed her six-month probation period. The trial court excluded the evidence primarily on the ground that Quintana had successfully completed a six-month deferred probation period, and so, she was never convicted. The court also noted that more than ten years had passed since her plea and that her

prior offense had no connection to the case against Molinar and therefore had no relevance to show bias.

The principal argument raised in the trial court was whether Quintana's prior offense was admissible under evidence rule 609. That rule provides that a court must admit "[e]vidence of a criminal conviction offered to attack a witness's character for truthfulness" if three conditions are satisfied: "(1) the crime was a felony or involved moral turpitude, regardless of punishment; (2) the probative value of the evidence outweighs its prejudicial effect to a party; and (3) it is elicited from the witness or established by public record." TEX. R. EVID. 609(a). The rule also places limitations on the use of such evidence when more than ten years have passed since the conviction or the witness's release from confinement, whichever is later. TEX. R. EVID. 609(b).

The offense of making a false report to a police officer is a crime involving moral turpitude. *Lape v. State*, 893 S.W.2d 949, 958 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). But deferred adjudication is not a criminal conviction and, consequently, is not admissible under rule 609. *Juneau v. State*, 49 S.W.3d 387, 389 (Tex. App.—Fort Worth 2000, pet. ref'd); *Duncan v. State*, 899 S.W.2d 279, 281-82 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). Because Quintana successfully completed deferred probation[4] and was never convicted, the trial court correctly concluded that evidence of her offense is not admissible under rule 609.

Molinar also argues that, regardless of rule 609, evidence of Quintana's prior offense was admissible to show her possible bias, self-interest, or motive for testifying. *See* TEX. R. EVID. 613(b). The burden of showing the relevance of Quintana's prior offense to those issues rested on

---

[4] A witness's *current status* as being on deferred adjudication may be admissible to show the witness's bias, motive, or ill will emanating from that status. *Juneau*, 49 S.W.3d at 389-90; *Duncan*, 899 S.W.2d at 281; *see Alford v. United States*, 282 U.S. 687, 693 (1931) (evidence that witness was in federal custody was admissible to show whether his testimony "was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution"). But that theory of admissibility does not apply in this case because Quintana had completed her deferred probation well before any of the events at issue in this case.

5

Molinar as the proponent of that evidence. *See Chambers v. State*, 866 S.W.2d 9, 26–27 (Tex. Crim. App. 1993) (en banc); *Lape*, 893 S.W.2d at 955.

The United States Supreme Court has explained the distinction between impeachment by evidence of a prior conviction and impeachment by demonstrating bias, prejudice, or ulterior motives. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974). The former is "a general attack on the credibility of the witness." *Id.* The latter, however, is "[a] more particular attack on the witness' credibility [which] is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness *as they may relate directly to issues or personalities in the case at hand*." *Id.* (emphasis added). In other words, there must be some "'logical relationship' or 'causal connection': a showing by the proponent of the cross-examination that the circumstances he wishes to call to the witness's attention in fact give rise to an inference of undue influence or bias . . . ." *Jones v. State*, 571 S.W.3d 764, 769 (Tex. Crim. App. 2019). This nexus requirement is not rigorously applied, but neither has it been abandoned. *See id.* Rather, it is applied so that a defendant is "permitted to explore any *plausible basis* for witness bias . . . ." *Id.* (emphasis added).

Molinar's theory is that Quintana did not have a good relationship with Molinar and Norma and was "not above" having her daughter lie and create false accusations against Molinar. But there is no evidence of a strained relationship or any other motive for Quintana to harm Molinar. On the contrary, Quintana testified on direct examination that she respected Molinar and trusted him with her children, and that she had a more social relationship with Norma. She had some minor arguments with Norma but denied having any kind of arguments or other reasons that would lead her to make up charges against Molinar. Molinar neither cross-examined Quintana concerning her relationship with Molinar and Norma, nor attempted to otherwise develop evidence of any possible

sources of friction or animosity.[5] Rather, he simply asked whether she thought it is wrong to lie and whether she only wanted justice for her daughter, then confronted her with her prior offense.

Quintana's account of her relationship with Molinar and Norma, as well as her denial of reasons she would fabricate charges against Molinar are certainly fair subjects for testing by cross-examination. But Quintana's prior offense is not a permissible means of performing that test because it was totally unconnected to any person (including Molinar) or event at issue in this case. The trial court specifically noted this lack of a logical connection as a basis for excluding the testimony: "Now, if it is somebody tied to this case, then it might show some bias or something. But it's nobody tied to this case, so I don't think it has any relevance at all."

In the absence of any evidence demonstrating a nexus between Quintana's prior offense and the people or events involved in the case against Molinar, the effort to introduce evidence of that prior offense is simply an attempt to attack Quintana's general character for truthfulness. Such an attack, however, is not permitted under the rules of evidence: "Except for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." TEX. R. EVID. 608(b). Rule 608 therefore prohibits the admissibility of Quintana's prior offense. *See Hawkins v. State*, No. 14-01-00542-CR, 2002 WL 1489143, at *2 (Tex. App.—Houston [14th Dist.] July 11, 2002, pet. ref'd) (not designated for publication) (evidence that witness previously falsely accused another of committing a robbery, offered to show that witness was falsely accusing defendant of murder, held inadmissible under rule 608).

The trial court did not abuse its discretion by excluding evidence of Quintana's prior

---

[5] When Quintana stated that she did not attend one of the birthday celebrations, Molinar asked whether that was because she did not get along well with Norma. Quintana answered that it was because she was busy with her business. Molinar did not pursue the line of questioning.

offense.

Issue One is overruled.

**B. Denial of motion for directed verdict**

In Issue Two, Molinar challenges the trial court's denial of his motion for directed verdict on Count I, continuous sexual abuse of a child. *See* TEX. PENAL CODE ANN. § 21.02(b). That offense requires proof that the defendant committed two or more acts of sexual abuse "during a period that is 30 or more days in duration . . . ." TEX. PENAL CODE ANN. § 21.02(b)(1). This language has been interpreted as requiring that "the last act of sexual abuse occur on at least the 29th day after the day of the first act." *Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The acts of sexual abuse need not be committed against the same victim. TEX. PENAL CODE ANN. § 21.02(b)(1).

An "act of sexual abuse" includes "indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child . . . ." TEX. PENAL CODE ANN. § 21.02(c)(2). Under section 21.11(a)(1), a person commits indecency with a child by "engag[ing] in sexual contact with the child or caus[ing] the child to engage in sexual contact . . . ." TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" in this context "means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:"

> (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or
>
> (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person.

TEX. PENAL CODE ANN. § 21.11(c).

Molinar does not dispute that the sexual acts detailed in the record constitute "acts of sexual abuse" for purposes of the continuous sexual abuse statute. He argues only that the State failed to

prove that at least two of those acts occurred more than thirty days apart. The evidence refutes this argument.

The record shows that Molinar committed an act of sexual abuse against K.R. during the night spanning July 10 and 11, 2017. Within a day or two, L.M. told her mother that Molinar had also committed acts of sexual abuse against her. L.M. later related that specific acts of sexual abuse occurred when the family was celebrating various birthdays, including Grandma Norma's, L.M.'s father's, Steven's, and Malakai's birthdays. Other evidence shows that those birthdays occur in January (Grandma Norma and L.M.'s father), February (Steven), and May (Malakai). While the record does not reflect the exact date of the birthday celebrations, every date in each of these months is more than thirty days from July 10 and 11, 2017. There is, therefore, evidence from which a rational juror could have found, beyond a reasonable doubt, that Molinar committed two or more acts of sexual abuse at least thirty days apart. *See Queeman*, 520 S.W.3d at 622; TEX. PENAL CODE ANN. § 21.02(b)(1).

Issue Two is overruled.

## V.  CONCLUSION

The judgment of the trial court is affirmed.

GINA M. PALAFOX, Justice

January 28, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

9