

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00388-CR

_____

CHARLES VICTOR RIDDLE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1447916D

---

Before Pittman, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Charles Victor Riddle appeals his conviction and six-year sentence for indecency with a child by contact. In two points, Riddle argues that the trial court abused its discretion by allowing the State to introduce extraneous-offense evidence during the guilt-innocence phase of trial and that the trial court reversibly erred by not allowing him to "fully cross-examine the witnesses." Because we conclude that the trial court was within its discretion by allowing the challenged extraneous-offense evidence to be introduced in response to Riddle's fabrication defense and because we conclude that Riddle has either failed to preserve his cross-examination complaints for our review or that the trial court did not abuse its discretion by excluding the evidence, we will affirm.

## II. BACKGROUND

Police began to investigate Riddle after the complainant in this case, Jane,[1] reported to School Counselor that when she was ten years old, Riddle, Jane's step-grandfather, came into her room one night, woke her up by touching her genitals and then stuck his fingers inside her vagina. The State eventually indicted Riddle for the offenses of aggravated sexual assault of a child and indecency with a child by contact.

---

[1]We use aliases whenever possible to protect the identity of the minor complainant in this case. 2nd Tex. App. (Fort Worth) Loc. R. 7.

At voir dire, defense counsel began to ask members of the venirepanel about "false accusations" and why a child might fabricate an accusation about sexual assault against someone. Defense counsel maintained this defensive theory of fabrication in opening arguments at trial. Indeed, defense counsel stated during opening arguments that "[Jane] was upset and bothered because [Mother was] getting kicked out of another house, and she, [Jane], was tired of that, and that's where these allegations come from." And then again during opening remarks, defense counsel said that "there is no credibility to these allegations."

At trial, Jane, who was then sixteen years old, testified that when she was between eight and nine years old, she and Mother moved in with Riddle and Grandmother. According to Jane, one night when she was ten years old, Riddle came into her room after she had fallen asleep and "used his, like, mouth down there," referring to her genitals. She said that Riddle "put his fingers there, too." Jane said that the digital touching occurred on the outside and inside of her genitals. Startled awake by what was happening, Jane said that she got up, walked downstairs to Mother who was sleeping on the couch, told Mother that she was cold, and stayed downstairs the remainder of the night. By Jane's account, the next night, Mother stayed with Jane in Jane's room. Mother asked if anything had happened the night before, but Jane said that she did not reveal to Mother what had happened because she was scared.

Prior to cross-examination and outside the jury's presence, defense counsel sought a ruling by the trial court on whether he would be allowed to ask Jane about her alleged report that a man named Mark had pulled down her pants while she slept on the couch. The trial court ruled that defense counsel could not ask Jane about the report. Important to this appeal, during the discussion with the trial court, defense counsel objected that his need to question Jane about the report was necessary to "contradict the distance of [the] outcry." Defense counsel also objected that this evidence "[went] to her knowledge," was "relevant," "[went] to her credibility," and went "to bias, motive, or interest." During cross-examination, defense counsel asked Jane whether she had made up the allegation against Riddle at Mother's request because Grandmother had done something to Sister. Jane denied that being the case.

Mother also testified at trial. But prior to Mother testifying, the trial court held a hearing outside the presence of the jury to determine whether Riddle would be allowed to ask Mother about her past domestic-violence charges. The trial court ruled that Riddle could ask Mother about only her most current conviction. During the hearing, the objections Riddle lodged were to "relevan[ce]" and "bias."

During her testimony before the jury, Mother described the night that Jane came down to sleep with her, declaring that she was cold. According to Mother, Jane had an "odd" look on her face. Mother said that she told Jane to go back upstairs to bed, but Jane insisted that she stay downstairs. Mother averred that she "felt like something wasn't right." And Mother stated that Jane continually said that she did

4

not want to go back upstairs because it was cold, but by Mother's recollection, it was not cold. Mother said that the next night she stayed with Jane after putting her to bed and that Riddle walked into the room. When Mother asked Riddle why he was there, she said that he told her he was going to tell Jane goodnight. Mother said that this confused her because Riddle never "really told [her children] goodnight" and that she "just knew something wasn't right." Mother said that she again asked Jane whether something had happened the night before, but Jane insisted that nothing had happened.

School Counselor testified as the State's designated outcry witness. In addition to testifying to what Jane had told her had happened the night Riddle came into Jane's room, School Counselor generally testified about her relationship with Jane. On cross-examination, School Counselor averred that one of the topics that she and Jane discussed on the day Jane made her outcry was how upset Jane was about Mother having been kicked out of the house where they were staying the night before Jane came to see School Counselor. Defense counsel then inquired about what Jane had specifically said about where she had lived over the years. The State objected on hearsay grounds. Defense Counsel argued that his question went "to optional completeness," but the trial court sustained the State's objection.

City of Keller Police Detective Wesley Horton testified at trial that he began investigating Jane's allegations shortly after she made her outcry to School Counselor. On direct examination, Horton's testimony merely summed up the steps he took in

5

order to ultimately ascertain whether to arrest Riddle, which he did. On cross-examination, defense counsel limited his questioning of Horton to whether he had any specific training in "false outcries," and Horton explained he did not.

One of Riddle's defense witnesses, Aunt, who is one of Grandmother's children from another marriage, testified that Mother often caused problems for the entire family. Aunt also recalled an argument between Mother, Riddle, and Grandmother regarding Sister's legal troubles. As defense counsel questioned Aunt about the argument, he asked her whether Mother made any threats during it. The State objected on hearsay grounds, and defense counsel argued that he be allowed to ask about any threats on the grounds of "prior inconsistent statements . . . [a]nd optional completeness." The trial court sustained the State's hearsay objection. Defense counsel also elicited testimony from Aunt that she had three children, that she did not have any reservations about leaving her children in Riddle's care, and that the three children loved Riddle and were very close to him.

After defense counsel passed Aunt as a witness, the State asked to approach the bench. The State claimed that defense counsel had left a false impression that Riddle was a "great perfect grandfather that no one is afraid of" and that because of this, it should be allowed to question Aunt about an alleged event wherein Riddle had been seen touching Sister inappropriately when she was younger—a topic that the trial court had previously ruled inadmissible. Agreeing with the State, the trial court then

6

allowed the State to question Aunt about the alleged event. Aunt said that no one had ever told her about the incident.

After Aunt's testimony and after the defense stated that it was prepared to rest its case, the trial court held another hearing outside the presence of the jury. The State contended that not only had Aunt's testimony opened the door to question her about the alleged couch incident involving Sister, but her testimony had also opened the door for the State to be allowed to call Sister to the stand to discuss other alleged events that had happened between her and Riddle—testimony that the trial court had also earlier ruled was inadmissible. The trial court agreed that the defense had opened the door to the testimony and ruled that Sister be allowed to testify.

Sister testified that when she was in "about [the] second grade," she was staying the night at Riddle and Grandmother's house. Sister said that, per her custom when it was only the three of them, she slept between them in their bed. Sister recalled that she woke to the sensation of her pants coming off, but she fell back asleep. According to Sister, when she woke again, Riddle's penis was in her hand. Sister said that she fell back asleep and that when she woke the next morning, Riddle was gone, but Grandmother asked her, "Where are your shorts?" Sister averred that after she replied, "I don't know," the conversation ended. Sister believed that the incident occurred when she was between the ages of six and ten years old.

Sister also recalled an incident with Riddle when she was sixteen years old. By Sister's account, she and Riddle had gone upstairs and smoked some

methamphetamine. Sister said that after the two had smoked the methamphetamine, Riddle came toward her, put his hands on her knees, and stated that he wanted to perform oral sex on her. Sister averred that she pushed Riddle away, went downstairs, and then went outside and sat on the back porch.

The State also called Aunt's Sister-in-law as a rebuttal witness. Sister-in-law testified that she and her family were visiting Aunt and others for a birthday party in 2006. Sister-in-law said that while at the party she went to use the restroom near the den when she saw Sister apparently sleeping on the den's couch. As Sister-in-law came out of the bathroom, she saw Sister again, still apparently asleep, and Riddle "sitting like where her knees were, and he had his hand in her shorts." Sister-in-law stated that it appeared that Riddle was "rubbing" Sister with his hand between her legs. According to Sister-in-law, she asked Riddle what he was doing, and he stopped. Contrary to Aunt's testimony that she was unaware of the couch incident involving Sister, Sister-in-law said that she told Aunt, Aunt's husband at the time, and Mother what she had seen. Sister-in-law admitted that she did not call the police.

During closing arguments, defense counsel claimed that Riddle had not done what Jane alleged. Defense counsel specifically pointed out that he had only asked Horton questions about his training in "false outcries" and that Horton had not had any training regarding them. Defense counsel also referred to Jane's allegations as a "so-called outcry" and insinuated that the reason Jane's allegations were revealed years

8

after the incident supposedly happened was family turmoil and not that Riddle had done anything inappropriate with Jane.

Eventually, a jury returned a verdict of guilty on the charge of indecency with a child by contact but acquitted Riddle of the charge of aggravated sexual assault of a child. After a brief punishment hearing, the jury assessed punishment at six years' confinement. The trial court rendered judgment accordingly, and this appeal followed.

### III. DISCUSSION

**A.    The trial court did not abuse its discretion by allowing the State to elicit testimony about extraneous-offense evidence that Riddle had inappropriately touched and made sexual advances toward Sister.**

In his first point, Riddle argues that the trial court abused its discretion by admitting testimony regarding three extraneous offenses involving Riddle and Sister. First, Riddle complains about the trial court allowing Sister to testify that when she was in second grade and was sleeping in the bed with Riddle and Grandmother, she woke up to her pants being pulled down and then later to Riddle's penis being in her hand. Second, Riddle complains about Sister also testifying that when she was sixteen years old, and after having consumed methamphetamine with Riddle, Riddle asked to perform oral sex on her. And third, Riddle complains that Sister-in-law should not have been allowed to testify that she once saw Riddle on the couch with Sister with his hand in her shorts rubbing between her legs. Riddle argues that this evidence was not admissible under Texas Code of Criminal Procedure Article 38.37 nor under

9

Texas Rules of Evidence 403 and 404(b).  The State argues, among other contentions, that the trial court did not abuse its discretion by allowing the challenged testimony because it was offered to rebut Riddle's defensive theory that Jane fabricated her outcry.  We agree with the State.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion.  *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).  The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement.  *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996).  If the trial court's decision was correct on any theory of law applicable to the case, we will sustain it.  *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999); *see also Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004) ("If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment.").  This is true even if the trial judge failed to give any reason or used the wrong reason for its ruling.  *Prystash*, 3 S.W.3d at 527.

In his brief, Riddle places heavy emphasis on the fact that the trial court initially ruled that the challenged evidence was inadmissible under Article 38.37,[2] but then the

---

[2]Texas Code of Criminal Procedure Article 38.37 allows for the introduction of evidence of extraneous offenses or bad acts in certain criminal proceedings when certain criteria are met.  Tex. Code Crim. Proc. Ann. art. 38.37.  Given our disposition of this point, we need not address whether the challenged evidence was also admissible under Article 38.37.

trial court later ruled that he had opened the door to the testimony by creating a false impression of Riddle being a "perfect" grandfather. As mentioned, however, we must uphold the trial court's ruling if it is correct under any theory of law even if the trial court gave the wrong reason for its ruling. *Id.* And we conclude that the trial court could have allowed in the challenged testimony to rebut Riddle's defensive theory that Jane had fabricated her outcry against him.

As a general rule, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b); *see Couret v. State*, 792 S.W.2d 106, 107 (Tex. Crim. App. 1990) ("The general rule is that an accused is entitled to be tried for the offense for which he is charged and not for some collateral crime or for being a criminal generally."). But the Texas Court of Criminal Appeals has determined that despite Rule 404(b)'s general prohibition on the admissibility of character-conformity evidence, extraneous-offense evidence can be admitted to rebut the defensive theory of fabrication. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). In *Bass*, a jury convicted Bass of two counts of indecency with a child. The State's case rested primarily on the complainant's testimony that Bass sexually assaulted her on church property where he was a pastor and on extraneous-offense evidence that he sexually assaulted two other girls there. *Id.* at 557. The complainant in *Bass* testified that Bass sexually assaulted her in his church office and in the church parking lot. The extraneous-offense evidence demonstrated that at two separate

11

times, Bass had sexually assaulted a five-year-old girl and an eleven-year-old girl in his church office. The *Bass* court noted, "It seems obvious that, if the State can show that a defendant has *committed similar sexual assaults* against . . . children, an affirmative defense allegation that the victim [of the charged offense] fabricated her claims is less likely to be true . . . . [T]he evidence directly rebuts the defensive claims and has logical relevance aside from character conformity." *Id.* at 562–63 (emphasis added).

A year after *Bass*, the court again held that extraneous-offense evidence was admissible to rebut a fabrication defense and again focused on the similarities between the extraneous offenses and the charged offense. *See De La Paz v. State*, 279 S.W.3d 336, 348–49, 350 (Tex. Crim. App. 2009) (holding that evidence of other "buy-bust" drug deals was allowed under Rule 404(b) when appellant's defensive theory was that State's witnesses were lying about the instant drug deal to please prosecution); *see also Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[E]xtraneous-offense evidence, under Rule 404(b), is admissible to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination[.]").

Here, Riddle's entire defensive strategy was that Jane had created a "false outcry" as retaliation against Riddle and Grandmother for how they treated Mother and Sister during some of their criminal troubles. Riddle's defense of fabrication was consistent and prevalent. Indeed, Riddle began questioning members of the venirepanel about false outcries during voir dire. Riddle stated in his opening

12

statements that Jane had fabricated her outcry because she "was upset and bothered because [Mother was] getting kicked out of another house, and she, [Jane], was tired of that, and that's where these allegations come from." And the only question Riddle asked of Horton was whether he had any training in false outcries. Riddle also argued in his closing argument that Jane had fabricated the allegations against him. Because of Riddle's defense of fabrication, the State was entitled to offer evidence of his similar extraneous acts. *See De La Paz*, 279 S.W.3d at 350. Thus, the question remains whether the challenged extraneous-offense evidence was similar to the charges that Riddle committed indecency with a child by contact or the aggravated sexual assault of a child.

The similarities between the offenses charged against Riddle and the challenged extraneous-offense evidence are much like the similarities found between the charged offense in *Bass* and the challenged extraneous-offense evidence admitted there. Much like in *Bass*, where the State introduced testimony that Bass had sexually assaulted other children on church property in order to rebut his defensive theory that the complainant in that case had fabricated her allegation, here, the State elicited testimony of similar acts by Riddle performed against Sister to rebut his theory that Jane had fabricated her outcry against him. Indeed, Sister, Riddle's step-granddaughter, testified that when she was in the second grade and sleeping next to Riddle, she woke to the sensation of her pants being removed, she later woke to find his penis in her hand, and she ultimately woke up without her pants.

13

Similarly, Jane, also Riddle's step-granddaughter, testified that when she was roughly ten years old, Riddle came into her room as she slept, and she woke to Riddle touching her genitals and placing his mouth on them. Not only is Sister's testimony about what happened to her as she was sleeping as a child reminiscent of Jane's complaint, Sister's testimony that Riddle requested to perform oral sex on her is also reminiscent of Jane's testimony that she woke to Riddle placing his mouth on her genitals. Just as similar is Sister-in-law's testimony that she observed Riddle with his hand in Sister's shorts, rubbing in between her legs as she slept. We hold that the trial court was within the zone of reasonable disagreement when it allowed the State to introduce the challenged extraneous-offense evidence because it rebutted Riddle's defensive theory of fabrication.[3] *See De La Paz*, 279 S.W.3d at 350; *Prystash*, 3 S.W.3d at 527.

We also conclude that Riddle's argument that the challenged evidence was admitted in violation of Rule 403 is unavailing. Rule 403 provides that the trial court

---

[3]The trial court emphasized the limited admissibility of the challenged evidence. In its charge in the guilt-innocence phase of the trial, the trial court instructed,

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed crimes, wrongs or acts other than the crime alleged in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other crimes, wrongs or acts, if any were committed, and even then you may only consider those other crimes, wrongs or acts in determining the proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, if any, in connection with the crimes alleged in the indictment in this case, and for no other purpose.

may exclude relevant evidence if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Factors to consider in conducting a Rule 403 analysis include the evidence's potential to impress the jury in some irrational but nevertheless indelible way, the time used to develop the evidence, and the proponent's need for the evidence. *See Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

We begin with an evaluation of the evidence's probative value, an inquiry measured by more than simply the relevance of the evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). An item's probative value refers to "how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation," and it is analyzed in light of the proponent's need for that item of evidence. *Id.* Thus, when faced with a Rule 403 objection, the trial court should examine whether the proponent of the evidence has the ability to prove the particular proposition or fact with other evidence. *Id.* If so, then the probative value of the objectionable evidence "will weigh far less than it otherwise might in the probative-versus-prejudicial balance." *Id.*

Here, regarding the probative value of the challenged evidence, evidence that Riddle had indecently touched Sister while she was sleeping as well as evidence that Riddle desired to perform oral sex on another one of his step-granddaughters strongly serve to make more probable the existence of the fact that Riddle intended to

15

indecently touch Sister or sexually assault her while she slept, facts of consequence to the offenses that the State was attempting to prove. Such evidence is rarely excluded under Rule 403 as lacking probative value. *See Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("[T]he Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children."). This factor weighs heavily in favor of the trial court's ruling to admit the challenged evidence.

Regarding the challenged evidence's potential to impress the jury in some irrational but nevertheless indelible way, "[w]hile evidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way, our rules of evidence require the exclusion of relevant evidence only if the danger of unfair prejudice, delay, or needless repetition substantially outweighs the probative value." *Wheeler*, 67 S.W.3d at 889. Given the similarities between the extraneous offenses that Riddle complains of and the charges the State sought to prove, we cannot conclude that, even considering the emotional weight of the challenged evidence, the danger of unfair prejudice outweighs the probative value of the evidence. Further, the State did not delay the trial in any way in order to present the evidence nor did the State needlessly attempt to admit the same evidence repetitively. In fact, the State's questioning of Sister about the extraneous-offense conduct took less than three pages of a six-volume reporter's record, and the State's questioning of Sister-in-law about the couch incident took less than two pages

16

of testimony. We conclude that this factor weighs slightly in favor of the trial court's ruling to admit the challenged evidence.

Regarding the proponent's need for the evidence, the State's need for the challenged evidence was strong. Generally, in prosecutions of sex-based offenses committed against children, the State's need for extraneous-offense evidence, like the challenged evidence in this case, is frequently based on a lack of physical evidence or eyewitness testimony to the charged offense. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd) (holding that the State's need for evidence weighed strongly in favor of admission because, without it, the State's case was reduced to only the testimony of the complainant); *Newton v. State*, 301 S.W.3d 315, 320 (Tex. App.—Waco 2009, pet. ref'd) (holding that the State's need for extraneous-offense evidence was "considerable" when there were no eyewitnesses and no physical evidence available to corroborate the complainant's testimony in child sex abuse prosecution).

In this case, the State's need for the extraneous-offense evidence was high, given that due to the passage of time, no physical evidence of Riddle's indecent touching of Jane could have been available, and there were no eyewitnesses to Jane's account of what happened. Even though School Counselor, Mother, and Horton testified at trial, their testimonies about what occurred between Riddle and Jane were basically a retelling of what Jane had told School Counselor. The State also used the extraneous-offense evidence to rebut Riddle's argument that Jane had fabricated the

17

allegations of abuse because she was angry with how Riddle and Grandmother had treated her, Sister, and Mother. *See Robisheaux*, 483 S.W.3d at 220 (noting that the State's need for extraneous-offense evidence was high when appellant argued that complainant had fabricated her allegations); *Jones v. State*, 119 S.W.3d 412, 423 (Tex. App.—Fort Worth 2003, no pet.) (noting that "the State needed the evidence because Jones argued that the charged offense never occurred, or that G.V. fabricated the whole incident"). This factor weighs in favor of the trial court's ruling to admit the challenged evidence.

In short, each of the Rule 403 factors that the trial court should have considered weigh in favor of the trial court's ruling that the challenged evidence was admissible. Having determined that each of the relevant factors weighs in favor of the admission of Sister's and Sister-in-law's testimonies about extraneous offenses committed by Riddle upon Sister, we hold that the trial court did not abuse its discretion by admitting the evidence. We therefore overrule Riddle's first point in its entirety.[4] *See Robisheaux*, 483 S.W.3d at 220.

---

[4]Although Riddle does not make discrete arguments based on Texas Rules of Evidence Rule 401 and Rule 402, he does mention these rules regarding the admissibility of relevant evidence in his brief. But because we hold that the challenged evidence was admissible under Rules 404(b) and 403, we need not address whether the evidence was admissible under Rules 401 and 402. *See* Tex. R. App. P. 47.1 (requiring appellate court to address "every issue raised and necessary to final disposition of the appeal"); *see also Smith v. State*, 316 S.W.3d 688, 700 n.2 (Tex. App.—Fort Worth 2010, pet. ref'd) (concluding that it need not address Rules 401 and 402 after determining that evidence was admissible under Rules 403 and 404(b)).

**B.** **Riddle has failed to preserve most of his cross-examination arguments for our review, or the trial court did not abuse its discretion by limiting cross-examination.**

In his second point, Riddle argues that the trial court erred by "refusing to allow [him] to fully cross-examine the witnesses." Specifically, Riddle takes issue with the trial court barring him from questioning School Counselor about what Jane had "told her about where she had lived over the years"; from questioning Jane about an incident wherein she allegedly said that a man named Mark had removed her pants while she slept; from questioning Mother about her "extensive criminal history"; and from asking Aunt what Mother had allegedly said when she threatened Riddle during an argument. The State argues that Riddle has failed to preserve these arguments for our review. We agree that Riddle has failed to preserve most of his complaints under this point, and we also conclude that to the degree he has preserved some of these complaints, the trial court did not abuse its discretion in its rulings.

### 1. Riddle has failed to preserve most of his second point.

To preserve an issue for appellate review, a party must make a timely objection or request to the trial court, sufficiently stating the specific grounds for the requested ruling, unless apparent from the context, and obtain an adverse ruling. *See* Tex. R. App. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Moreover, the objection or request at trial must comport with the complaint presented on appeal. *Wilson*, 71 S.W.3d at 349. Even constitutional errors may be forfeited by failure to object at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim.

19

App. 1995). When a party's argument for admitting evidence could refer to either the Rules of Evidence or the Confrontation Clause, he must specifically articulate that the Confrontation Clause demands admission of the evidence to preserve error on this ground. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005).

In his brief, Riddle's argument is mainly focused on the Confrontation Clause. Indeed, even though Riddle labels his point as being about cross-examination in general, the majority of authority that he cites focuses on Confrontation Clause issues, and Riddle mentions "confrontation" or "Confrontation Clause" in his point several times. Most notably, Riddle argues that if this court were to agree with him that the trial court erred by not allowing him to "fully" cross-examine the witnesses, then the harm analysis we should apply is the *Van Arsdall* standard. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986) (establishing the factors to consider when analyzing Confrontation Clause errors of exclusion); *see also Shelby v. State*, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991) (adopting the *Van Arsdall* standard of harm for confrontation errors of exclusion).

Most of Riddle's objections made at trial bear no relationship to an objection under the Confrontation Clause. Instead, the majority of Riddle's objections were to "relevan[ce]," "optional completeness," "knowledge," "distance of the outcry," "prior inconsist[ency]," or being "more prejudicial than probative." The only objections lodged by Riddle that bear a relationship to the Confrontation Clause were his objections about "bias, motive, or interest," and "credibility." *See Irby v. State*,

20

327 S.W.3d 138, 144 (Tex. Crim. App. 2010) (discussing how the Confrontation Clause may require admission of evidence reasonably calculated to expose a witness's motive, bias, or interest). But because these objections could refer to either the Rules of Evidence or the Confrontation Clause, it was incumbent upon Riddle to specifically articulate that the Confrontation Clause demanded admission of the challenged excluded testimony in order to preserve such an argument for our review. *Reyna*, 168 S.W.3d at 179. Because Riddle did not specifically articulate a Confrontation Clause objection, he has failed to preserve any complaint for our review based on the Confrontation Clause. *See id.*

Furthermore, regarding the trial court's prohibiting Riddle from questioning School Counselor about what Jane had told her and from asking Aunt about threats Mother allegedly lodged against Riddle, the objections made at trial do not comport with the arguments Riddle now makes on appeal. The only objections made to these rulings at trial were "optional completeness" or "prior inconsist[ency]." Thus, the arguments made at trial to these rulings excluding evidence do not comport with the complaints Riddle now presents on appeal. *See Wilson*, 71 S.W.3d at 349. We conclude that Riddle has wholly failed to preserve his arguments about the trial court's denying him the opportunity to question School Counselor about what Jane said to her or to question Aunt about what Mother may have said to Riddle.

**2.    The trial court did not abuse its discretion by ruling that Riddle could not ask Jane about a prior statement and Mother about her past criminal history.**

The only remaining complaints in Riddle's second point that could be considered as being preserved for our review challenge the trial court's rulings that Riddle could not question Jane about an alleged prior statement she made that a man named Mark had removed her pants while she was sleeping and that Riddle could not question Mother about her prior criminal history.

As mentioned above, we review a trial court's admission or exclusion of evidence for an abuse of discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules and principles—that is, whether the court acted arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). We must uphold the trial court's ruling so long as it is "within the zone of reasonable disagreement." *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

Regarding the trial court's ruling that Riddle could not ask Jane about the prior statement, Riddle did not establish the proper foundation to examine Jane about "bias, motive, or interest" or "credibility," the only objections at trial that he made that bear any resemblance to the broad "cross-examination" argument he now makes on appeal. Under Texas Rules of Evidence 613(b), in order to examine a witness about a prior statement (written or oral) in an attempt to establish a witness's bias, the

22

inquiring party must first establish a proper foundation by telling the witness the contents of the statement, the time and place of the statement, and the person to whom the statement was made. Tex. R. Evid. 613(b); *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009). Here, Riddle never laid the proper foundation in order to question Jane about the statement; thus, the trial court did not abuse its discretion by excluding the evidence.

Regarding the trial court's ruling that Riddle could not ask Mother about her criminal history of domestic violence, Riddle failed to put on any evidence that the prior charges he desired to ask Mother about were final convictions, and the trial court did not otherwise abuse its discretion by not allowing Riddle to ask about the previous charges so that he could demonstrate the relevance of Mother having exposed Jane to "family violence as represented by contacts with the police." *See* Tex. R. Evid. 609 (stating that evidence of a "criminal conviction" is mandatorily admissible to attack a witness's character for truthfulness when certain criteria is met); *see also Perry v. State*, 236 S.W.3d 859, 870 (Tex. App.—Texarkana 2007, no pet.) (holding that trial court did not abuse its discretion by not allowing evidence that witness signed certain checks drawn on defendant's account for impeachment purposes under Rule 609 or as relevant evidence of bias when no evidence showed that witness had ever been convicted of an offense involving checks).

The only evidence in the record regarding Mother's past criminal charges is found in a discussion, held outside the jury's presence, in which Riddle sought to ask

Mother about her criminal history. During that discussion, all parties agreed that except for a single current charge of domestic violence, which the trial court ruled that Riddle could ask Mother about, all other past charges of domestic violence had either been dismissed or Mother had completed deferred adjudication regarding them, meaning those charges never became final convictions. *See Perry*, 236 S.W.3d at 870; *see also Juneau v. State*, 49 S.W.3d 387, 390 (Tex. App.—Fort Worth 2000, pet. ref'd) (reasoning that deferred adjudication is not a "conviction" for purposes of Rule 609). Because Riddle did not show at trial, and has not demonstrated on appeal, a right to cross-examine Mother about her non-convictions, the trial court did not abuse its discretion by not allowing him to question Mother about the past charges. We overrule Riddle's second point.

## IV. CONCLUSION

Having overruled both of Riddle's points on appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 25, 2019

24